Arthur W. Coviello (SBN 291226)
arthur.coviello@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

Michael J. Summersgill (*pro hac vice*)
Donald R. Steinberg (*pro hac vice*)
Jordan L. Hirsch (*pro hac vice*)
michael.Summersgill@wilmerhale.com
donald.steinberg@wilmerhale.com
jordan.hirsch@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

*Counsel for Defendant QD Vision, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| NANOSYS, INC., THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, and MASSACHUSETTS INSTITUTE OF TECHNOLOGY<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>QD VISION, INC.<br><br>　　　　Defendant. | Case No. 4:16-cv-01957-YGR<br><br>**DEFENDANT QD VISION, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' AMENDED CLAIMS OF INDUCED, CONTRIBUTORY, AND WILLFUL INFRINGEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Judge Yvonne Gonzalez Rogers<br><br>[Fed. R. Civ. Pro. 12(b)(6)]<br><br>Hearing Date: August 9, 2016<br>Hearing Time: 2:00 p.m. |

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ...................................................................................1

STATEMENT OF RELIEF REQUESTED.............................................................................1

STATEMENT OF ISSUES TO BE DECIDED ......................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................2

I.     Introduction.................................................................................................................2

II.    Factual Background ...................................................................................................4

     A.     Quantum Dot Technology..................................................................................4

     B.     Nanosys Conceded That Its Initial Complaint Failed To Properly Plead Induced, Contributory, and Willful Infringement ........................................5

     C.     Nanosys' Amended Complaint Does Not Allege Any Facts Showing That QDV Specifically Intended To Induce Infringement .................................6

     D.     Nanosys' Amended Complaint Does Not Allege Any Facts Showing That The Accused QDV Products Have No Non-Infringing Uses Or That QDV Knew That The Products Were Especially Made To Infringe..............6

     E.     Nanosys' Amended Complaint Does Not Allege Any Facts Showing That QDV Willfully Infringed ...............................................................8

III.    Argument ...................................................................................................................8

     A.     Nanosys' Induced Infringement Claim Should Be Dismissed With Prejudice ......................................................................................................10

     B.     Nanosys' Contributory Infringement Claims Should Be Dismissed With Prejudice ...............................................................................................13

     C.     Nanosys' Willful Infringement Claims Should Be Dismissed With Prejudice ......................................................................................................16

IV.    Conclusion ...............................................................................................................18

## TABLE OF AUTHORITIES

Page(s)

### CASES

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................8, 9

*Avocet Sports Tech., Inc. v. Garmin Int'l., Inc.*, No. C 11-04049 JW, 2012 WL
1030031 (N.D. Cal. Mar. 22, 2012) .................................................................10

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2009) ...............................................8, 9

*CAP Co. v. McAfee, Inc.*, Nos. 14-cv-05068-JD, 14-cv-05071-JD, 2015 WL
3945875 (N.D. Cal. June 26, 2015) .................................................................15

*Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920 (2015) ...............................11, 15

*Conley v. Gibson*, 355 U.S. 41 (1957) ...........................................................................9

*Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293 (Fed.
Cir. 2005) .........................................................................................................13

*DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293 (Fed. Cir. 2006) (en banc)......................10

*Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754 (2011)..................................10

*Halo Elecs., Inc. v. Pulse Elecs. Inc.*, Nos. 14-1513, 14-1520, 2016 WL 3221515
(U.S. Jun. 13, 2016) ........................................................................4, 8, 16, 17

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323
(Fed. Cir. 2012) ................................................................................................10

*Intellectual Ventures I LLC v. Bank of Am., Corp.*, No. 3:13-cv-358-RJC-DSC,
2014 WL 868713 (W.D.N.C. Mar. 5, 2014) .....................................................12

*Memory Integrity, LLC v. Intel Corp.*, -- F. Supp. 3d --, No. 3:15-cv-00262-SI,
2015 WL 7185462 (D. Or. Nov. 13, 2015)............................................9, 12, 13

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005) ...............11

*Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899 (Fed. Cir. 2014) ..............................10

*Monolithic Power Sys., Inc. v. Silergy Corp.*, 127 F. Supp. 3d 1071, 1077 (N.D.
Cal. 2015).................................................................................................9, 16, 17

*Pragmatus Telecom, LLC v. Ford Motor Co.*, No. 12-92-RGA, 2012 WL 2700495
(D. Del. July 5, 2012)........................................................................................14

*Redd Grp., LLC v. Glass Guru Franchise Sys., Inc.* No. 12-cv-04070-JST, 2013
    WL 3462078 (N.D. Cal. July 8, 2013)........................................................14, 15

*Somers v. Apple, Inc.*, 729 F.3d 953 (9th Cir. 2013) ..................................8, 9

*Straight Path IP Grp. Inc. v. Vonage Holdings Corp.*, No. 14-cv-502, 2014 WL
    3345618 (D.N.J. July 7, 2014) ......................................................................12

*Superior Indus., LLC v. Thor Global Enters. Ltd.*, 700 F.3d 1287 (Fed. Cir. 2012) ....................14

*U.S. Ethernet Innovations, LLC v. Netgear, Inc.*, No. C 13-2262-CW, 2013 WL
    4112601 (N.D. Cal. Aug. 12, 2013)..........................................................9, 14

*Unisone Strategic IP, Inc. v. Life Tech. Corp.*, No. 13-cv-1278, 2013 WL
    5729487 (S.D. Cal. Oct. 22, 2013) .............................................................12

*Vasudevan Software, Inc. v. TIBCO Software Inc.*, No. C 11-06638 RS, 2012 WL
    1831543 (N.D. Cal. May 18, 2012) .........................................................16, 17

*Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317 (Fed. Cir. 2009) ......................11

*Windy City Innovations, LLC v. Microsoft Corp.*, No. 16-cv-01729-YGR, 2016
    WL 3361858 (N.D. Cal. June 17, 2016)..................................................9, 11, 14

## STATUTES, RULES, AND REGULATIONS

35 U.S.C. §§ 101, *et seq.*.....................................................................................1

Fed. R. Civ. P. 12(b)(6)........................................................................................1

QD VISION INC.'S MOTION TO DISMISS
PLAINTIFFS' AMENDED CLAIMS OF INDUCED,
CONTRIBUTORY, AND WILLFUL INFRINGEMENT

### NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 9, 2016 at 2PM, in Courtroom 1, 4th Floor, United States District Court for the Northern District of California, Oakland Courthouse, 1301 Clay Street, Oakland, CA 94612, Defendant QD Vision, Inc. ("QDV") shall and hereby does move for an order dismissing the claims of induced infringement, contributory infringement, and willful infringement in the amended complaint filed by Plaintiffs Nanosys, Inc., Massachusetts Institute of Technology, and the Regents of the University of California (collectively, "Nanosys"). This motion is supported by the following Memorandum of Points and Authorities and such other written or oral argument as may be presented at or before the time this motion is taken under submission by the Court.

### STATEMENT OF RELIEF REQUESTED

Pursuant to Fed. R. Civ. P. 12(b)(6), QDV respectfully requests that the Court dismiss the claims of induced infringement, contributory infringement, and willful infringement in Nanosys' Amended Complaint.

### STATEMENT OF ISSUES TO BE DECIDED

1. Whether Nanosys' Amended Complaint fails to state claims under the Patent Laws of the United States, 35 U.S.C. §§ 101, *et seq.* for induced infringement, contributory infringement, and willful infringement because:

   a. The Amended Complaint fails to allege facts sufficient to show QDV's induced infringement of the asserted patents;

   b. The Amended Complaint fails to allege facts sufficient to show QDV's contributory infringement of the asserted patents; and

   c. The Amended Complaint fails to allege facts sufficient to show QDV's willful infringement of the asserted patents.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Since its founding in 2004, QDV has worked to revolutionize quantum dot technology—a technology that uses extremely small particles called nanocrystals to produce light with enhanced color for use in ultra-high definition displays and other applications.  As a result of its innovation, QDV now owns more than 180 patents and patent applications, has been recognized as a leader in quantum dot technology (including winning the 2016 CES Innovation Award), and has achieved significant success in the quantum dot market.  Threatened by QDV's growth, Nanosys filed this 13-patent case in a transparent attempt to slow QDV's success and accomplish in court what it has been unable to accomplish in the marketplace.  But in its haste to file this case and assert as many patents against QDV as possible, Nanosys has repeatedly failed to satisfy the most basic pleading standards.

Nanosys filed its initial complaint on April 14, 2016, alleging a combination of direct, induced, contributory, and willful infringement of 13 patents.  But its complaint consisted of nothing more than conclusory allegations without any factual support.  To support its claim of willful infringement, for example, Nanosys alleged in the same copied-and-pasted sentence (repeated 13 times) that QDV learned of each of the asserted patents in 2009—***despite that 6 of the asserted patents had not even issued as of 2009***.  Similarly, Nanosys' allegations of induced and contributory infringement consisted of the same conclusory paragraph—repeated word for word for each patent—without a single supporting fact.  On May 24, 2016, QDV moved to dismiss all claims in Nanosys' initial complaint.  Effectively conceding that its allegations were deficient, Nanosys withdrew its entire initial complaint.

Nanosys has now filed an amended complaint in which it drops some of its prior allegations and attempts to cure those that remain.  Specifically, it again asserts 13 patents in total and alleges induced infringement of 1 patent, contributory infringement of 2 patents, and willful infringement of 7 patents.  But Nanosys' second attempt to plead induced, contributory, and willful infringement still falls far short of the pleadings requirements and confirms what was

clear from Nanosys' initial complaint:  Nanosys has no factual basis to support its claims of induced, contributory, or willful infringement.[1]

***First***, to state a claim for induced infringement, the plaintiff must allege facts showing that the defendant had ***"specific intent"*** to induce a third party to directly infringe the asserted patent.  Nanosys still does not come close to meeting this burden.  Nanosys does not plead a single fact showing that QDV even knew about the patent for which Nanosys asserts induced infringement before this suit was filed—let alone that QDV specifically intended to infringe the patent.  Instead, Nanosys merely cites instructions that QDV provides its customers explaining how to use the accused products and concludes that this somehow establishes specific intent to infringe.  But the Supreme Court, Federal Circuit, and district courts have repeatedly held that merely providing instructions to customers—something that all product companies must do in the ordinary course of their business—does ***not*** without more show specific intent to infringe sufficient to maintain an inducement claim.  Indeed, were the rule otherwise, there would be no difference between direct infringement and inducement; effectively all product companies would allegedly be liable for inducement simply based on an assertion of direct infringement.  That is not the law.

***Second***, to state a claim for contributory infringement, the plaintiff must allege facts showing that the accused products have "***no substantial non-infringing use***" and that the defendant ***knew*** the products were ***"especially made or especially adapted"*** to infringe.  Even in its second attempt, Nanosys does not come close to meeting this standard.  Nanosys simply asserts in one sentence—without any facts or explanation—that the accused products have no non-infringing uses.  Nanosys also alleges that QDV knew that the accused products were especially made or adapted to infringe simply because QDV advertises that the products can be easily integrated into customers' products.  But it does not plead a single fact showing that QDV even knew of the patents for which it asserts contributory infringement before this case was

---

[1]     QDV does not with this motion request an order dismissing Nanosys' amended claims of direct infringement, but does not concede that the facts Nanosys has alleged in its direct infringement claims are correct or show infringement.

filed—let alone that QDV knew that the accused products were especially made or adapted to infringe these patents.

   ***Third***, under the Supreme Court's recent decision in *Halo Electronics, Inc. v. Pulse Electronics. Inc.*, Nos. 14-1513, 14-1520, 2016 WL 3221515 (U.S. Jun. 13, 2016), a plaintiff seeking enhanced damages must allege and prove that the defendant's actions were ***egregious***— such as "***willful misconduct***" that is "***wanton***," "***malicious***," "***consciously wrongful***," or "***characteristic of a pirate***." *Id.* at *7, 9.  Nanosys' amended complaint (which was filed on June 14, 2016, after the *Halo* decision) does not even attempt to meet this standard.  Nanosys merely alleges in the same copied-and-pasted paragraph for each of the 7 patents for which it asserts willfulness that QDV "knew or should have known" of the patents.  ***Nanosys does not allege (let alone provide facts that could show) that QDV somehow acted egregiously.***

   Nanosys has now had two chances to plead induced, contributory, and willful infringement and failed.  Nanosys' inability to do so confirms that there is no factual basis for these claims.  Accordingly, QDV respectfully requests that the Court dismiss Nanosys' claims of induced, contributory, and willful infringement with prejudice.

## II.   FACTUAL BACKGROUND

### A.   Quantum Dot Technology

   QDV develops and manufactures quantum dot technology.  This technology uses nanocrystal semiconductors to create ultra-high definition displays that make more of the color spectrum visible to the human eye.  Quantum dot technology makes the color on displays such as televisions brighter and more pure.  QDV has been developing quantum dot technology for 12 years.  QDV previously developed and made a quantum dot product called "Quantum Light Optic" that implemented quantum dot technology in television displays. (Dkt. 36 [Amended Complaint] ¶ 17.)  Nanosys asserts in its amended complaint that another quantum dot product that QDV markets under the name "Color IQ" infringes the asserted patents.  (*Id.* ¶ 20.)

### B.     Nanosys Conceded That Its Initial Complaint Failed To Properly Plead Induced, Contributory, and Willful Infringement

Nanosys filed its initial complaint on April 14, 2016, asserting that QDV's ColorIQ quantum dot technology infringed 13 patents.  (Dkt. 1 [Complaint].)  In copied-and-pasted allegations, Nanosys asserted direct infringement of 10 patents, induced "and/or" contributory infringement for 3 patents (*id.* at Counts XI-XIII), and willful infringement for all 13 asserted patents (*id.* at Counts I-XIII.)  In addition to failing to provide any support or explanation for its direct infringement claims, Nanosys did not plead a single fact showing that QDV had specific intent to infringe (for the inducement claim), a single fact showing that QDV knew that ColorIQ was specifically made to infringe and has no substantial non-infringing uses (for the contributory infringement claims), or a single fact showing that QDV willfully infringed.  Just by way of example:

- Nanosys' indirect infringement allegations consisted of the exact same copied-and-pasted paragraph that asserted without any support that QDV induced infringement "and/or" contributorily infringed (without specifying which).  (*Id.* ¶¶ 133, 147, 161.)

- Nanosys' willfulness allegations were limited to the exact same sentence—repeated 13 times—that simply asserted that QDV's alleged infringement was willful.  (*Id.* ¶¶ 43, 53, 63, 73, 82, 91, 100, 109, 118, 127, 141, 155, 169.)

- Nanosys even alleged that QDV knew about 6 of the asserted patents based on purported discussions in 2009—even though none of the six patents had even issued at that time.  (Dkt. 1-8 ['359 patent]; Dkt. 1-9 ['152 patent]; Dkt. 1-10 ['153 patent]; Dkt. 1-11 ['524 patent]; Dkt. 1-12 ['363 patent]; Dkt. 1-13 ['621 patent].)

QDV moved to dismiss all Nanosys' claims on May 24, 2016.  (Dkt. 32 [QDV's Motion to Dismiss Plaintiffs' Complaint].)  Effectively conceding that its initial complaint was deficient, Nanosys withdrew its initial complaint.

**C.**   **Nanosys' Amended Complaint Does Not Allege Any Facts Showing That QDV Specifically Intended To Induce Infringement**

Nanosys filed an amended complaint on June 14, 2016.  (Dkt. 36 [Amended Complaint].) In its second attempt, Nanosys alleges induced infringement of 1 patent—U.S. Patent No. 9,182,621 ("the '621 patent").  (*Id.* at Count XIII.)  But Nanosys' revised inducement allegation suffers from the same fatal flaw as its first attempt:  Nanosys still does not plead a single fact that could show that QDV had ***specific intent*** to infringe the '621 patent.

Just as it did in its initial complaint, Nanosys alleges that QDV induced infringement by "providing encouragement, instructions, protocols, and written guidance to its customers about how to incorporate a quantum dot product marketed by QDV under the trade name ColorIQ™ … into certain color display apparatuses."  (*Id.* ¶ 163.)  The only difference from its initial complaint is that Nanosys now lists some of the generic instructions that QDV allegedly provides to customers.  (*Id.* ¶¶ 169-172.)  Nanosys alleges, for instance, that QDV explains that its quantum dots are in a glass tube and that the glass tube can "sit[] atop the blue LED light bar." (*Id.* at ¶ 169.)  Nanosys then asserts that QDV markets ColorIQ as providing improved color and the '621 patent also claims to provide better color.  (*Id.* ¶ 171-172.)  Yet Nanosys provides no explanation as to how providing these generic instructions about ColorIQ's functionality shows that QDV specifically intended to infringe the '621 patent.  (*Id.* ¶¶ 162-173.)  In fact, Nanosys does not allege any facts showing that QDV even knew of the '621 patent when it provided the instructions to its customers or at any point before this case was filed.  (*Id.*)  Instead, it alleges only that QDV "knew ***or should have known***" of the patent because unidentified "employees" at QDV were allegedly "aware of and knowledgeable about" unspecified "developments and advances in the field."  (*Id.* ¶ 162 (emphasis added).)

**D.**   **Nanosys' Amended Complaint Does Not Allege Any Facts Showing That The Accused QDV Products Have No Non-Infringing Uses Or That QDV Knew That The Products Were Especially Made To Infringe**

Nanosys alleges in its' amended complaint that QDV contributorily infringes 2 patents— U.S. Patent No. 8,648,524 ("the '524 patent") and U.S. Patent No. 9,063,363 ("the '363 patent").

1  (*Id.* at Counts XI, XII.)  Nanosys again fails to allege facts that could support a contributory

2  infringement allegation.

3       Just as it did in its initial complaint, Nanosys merely asserts without any explanation,

4  support, or discussion that QDV contributorily infringes because ColorIQ "has no substantial

5  non-infringing uses."  (*Id.* ¶¶ 131, 147; *see also id.* ¶¶ 137, 153.)  The only difference from its

6  initial complaint (as shown in the table below) is that Nanosys now includes one additional

7  conclusory phrase (copied-and-pasted for both the '524 and '363 patents) repeating without any

8  support or explanation that the accused products' "only substantial use is as an infringing

9  component."  (*Id.* ¶¶ 137, 153.)

| Initial Complaint: Allegation that Accused Products Have No Substantial Non-Infringing Uses | Amended Complaint: Allegation that Accused Products Have No Substantial Non-Infringing Uses |
|---|---|
| On information and belief, the '524 Infringing Component is especially made or especially adapted for infringing use, and there are no substantially non-infringing uses of the '524 Infringing Component.<br><br>(Dkt. 1 [Initial Complaint] ¶ 134.) | On information and belief, the '524 Patent Infringing Component has no substantially non-infringing uses. <u>The '524 Patent Infringing Component's only substantial use is as an infringing component of the '524 Patent Infringing Devices</u>.<br><br>(Dkt. 36 [Amended Complaint] ¶ 137.) |

18       Nanosys also continues to allege without any support that the QDV knew that the accused

19  ColorIQ technology was "specially [made] and/or adapt[ed]" to infringe the '363 and '524

20  patents.  (*Id.* ¶¶ 131, 147.)  Nanosys asserts that QDV knew that ColorIQ was specifically made

21  to infringe simply because QDV advertises that ColorIQ can be customized to optimize any

22  display, ColorIQ is easy to integrate into customers' products, and QDV tells its customers how

23  to position the quantum dots in displays.  (*Id.* ¶¶ 132, 138-39, 148, 154-55.)  Nanosys never

24  explains how simply advertising ColorIQ shows that QDV knew that the technology was

25  especially made to infringe.  In fact, Nanosys does not allege a single fact that shows that QDV

26  even knew of the '524 or '363 patents when it advertised ColorIQ or at any point before this case

27  was filed.  It instead again alleges only that QDV "knew or ***should have known***" of the patents

because employees are aware of "developments and advances" in the industry.  (*Id.* ¶¶ 130, 146 (emphasis added).)

### E. Nanosys' Amended Complaint Does Not Allege Any Facts Showing That QDV Willfully Infringed

Nanosys' willfulness allegations also remain insufficient.  Nanosys asserts willful infringement of 7 patents.  (*Id.* at Counts I-VII.)  Its only alleged support for these allegations is that QDV "knew or should have known" of the 7 patents through unspecified "discussions" with Nanosys and because unidentified individuals allegedly were "QDV's co-founders" and "also co-founders of Nanosys" and "named inventors" on the asserted patents.   (*Id.* ¶¶ 41, 51, 61, 71, 81, 90, 99.)  Nanosys does not allege or plead a single fact showing that QDV actually knew (as opposed to "should have known") of any of the 7 patents before this case was filed.

After alleging only that QDV "knew or should have known" of the 7 patents, Nanosys concludes in one sentence—repeated for each of the 7 patents—that QDV "has acted with willful, intentional, and reckless disregard of the objectively high likelihood that its acts constitute infringement."  (*Id.* ¶¶ 44, 54, 64, 74, 83, 92, 101.)  Nanosys never addresses the new standard for enhanced damages under *Halo*, including that *Halo* held that the "objectively high likelihood" willfulness analysis is no longer the law.  *Halo*, 2016 WL 3221515, at *8-9.  Nor does Nanosys plead a single fact showing that QDV's actions somehow meet the *Halo* standard of egregious behavior.

## III.   ARGUMENT

To adequately plead a claim, the plaintiff must allege factual support for each element of the claim.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2009))).  The Supreme Court has repeatedly held that merely reciting the elements of a claim and providing "conclusory statements" without any factual support is insufficient to overcome a motion to dismiss.  *See Iqbal*, 556 U.S. at 678 ("***Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice***."); *Twombly*, 550 U.S. at 557 (a

"naked assertion" of wrongdoing without "factual enhancement" does not state a claim); *Somers v. Apple, Inc.*, 729 F.3d 953, 959-60 (9th Cir. 2013) (surviving a motion to dismiss ***"requires pleading facts, as opposed to conclusory allegations or the 'formulaic recitation of the elements of a cause of action.'"*** (quoting *Twombly*, 550 U.S. at 555)).[2]

The purpose of these pleading requirements is two-fold:  (i) to show that the plaintiff has some basis for its allegations; and (ii) to put the defendant on "fair notice" of the claims at issue. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555 (explaining a complaint must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests'" (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957))).

Applying this standard, courts have repeatedly dismissed induced, contributory, and willful infringement claims where the allegations in the complaint are made without factual support.  *See, e.g.*, *Windy City Innovations, LLC v. Microsoft Corp.*, No. 16-cv-01729-YGR, 2016 WL 3361858, at *6-7 (N.D. Cal. June 17, 2016) (dismissing contributory and willful infringement claims because plaintiff did not plead facts sufficient to show that the accused products have no non-infringing uses or pre-suit knowledge of the asserted patents); *Memory Integrity, LLC v. Intel Corp.*,  -- F. Supp. 3d --, No. 3:15-cv-00262-SI, 2015 WL 7185462, at *9-10 (D. Or. Nov. 13, 2015) (dismissing inducement claims with prejudice because the amended complaint's reference to the defendant's customer instructions is not sufficient to show a specific intent to infringe); *U.S. Ethernet Innovations, LLC v. Netgear, Inc.*, No. C 13-2262-CW, 2013 WL 4112601, at *3 (N.D. Cal. Aug. 12, 2013) (dismissing contributory infringement claims because the complaint's references to the defendant's product instructions are insufficient to allege that there was no substantial non-infringing use of the accused products); *Monolithic Power Sys., Inc. v. Silergy Corp.*, 127 F. Supp. 3d 1071, 1077 (N.D. Cal. 2015) (dismissing willful infringement claim because complaint did not allege facts to show that the "defendants acted with a level of intent that is more culpable that the typical infringer").

---

[2]     All emphases in this memorandum is added unless otherwise noted.

Nanosys' amended complaint fails to meet this pleading standard and confirms—as was evident when Nanosys withdrew its initial complaint—that Nanosys has no factual basis to support its allegations of induced, contributory, or willful infringement.

**A.      Nanosys' Induced Infringement Claim Should Be Dismissed With Prejudice**

To state a claim for induced infringement of the '621 patent, Nanosys was required to plead specific facts showing that:  (i) QDV knew of the '621 patent; (ii) QDV knowingly induced a third party to infringe the patent; (iii) QDV had specific intent to induce the third-party to infringe the '621 patent; and (iv) as a result of QDV's supposed inducement, the third party directly infringed the '621 patent.  *See DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (en banc) ("[T]he inducer must have an ***affirmative intent*** to cause direct infringement."); *Avocet Sports Tech., Inc. v. Garmin Int'l., Inc.*, No. C 11-04049 JW, 2012 WL 1030031, at *4 (N.D. Cal. Mar. 22, 2012) (setting forth elements of induced infringement).

The Federal Circuit has made clear that the "specific intent" element of an inducement claim requires not only knowledge of the asserted patent and intent to cause the acts that allegedly produced infringement, but also that the defendant had ***an affirmative intent to cause infringement***.  *See Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 904 (Fed. Cir. 2014) ("To prove inducement of infringement . . . the patentee must show that the accused inducer took an affirmative act to encourage infringement with the knowledge that the induced acts constitute patent infringement."); *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012)  (holding that "a complaint[] must contain facts plausibly showing that [defendants] ***specifically intended*** their customers to infringe [the asserted] patent and knew that the customer's acts constituted infringement" to survive a motion to dismiss); *DSU Med.*, 471 F.3d at 1306 ("[I]nducement requires evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities.").  The Supreme Court has confirmed this requirement, holding that "induced infringement . . . requires knowledge that the induced acts constitute patent infringement."  *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011).

1    Nanosys' second attempt to meet this standard is just as deficient as its first.  As an initial

2    matter, Nanosys fails to set forth any facts showing that QDV even knew of the '621 patent

3    before this suit was filed.  It alleges only that QDV "knew or should have known" of the patent

4    because unidentified "employees" were allegedly aware of unidentified "industry developments"

5    and does not cite a single fact showing that anyone at QDV actually knew of the '621 patent at

6    any point prior to the filing of this case.  As a matter of law, without pleading facts showing that

7    QDV knew of the '621 patent, Nanosys cannot maintain a claim that QDV specifically intended

8    to infringe the patent.  *See Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1926 (2015)

9    ("In contrast to direct infringement, liability for inducing infringement **attaches only if the**

10    **defendant knew of the patent** and the induced acts constitute patent infringement.") (internal

11    citation and quotation omitted); *Windy City*, 2016 WL 3361858, at *5-6 (finding plaintiff failed

12    to allege pre-suit knowledge sufficient to support its pre-suit inducement allegations).

13    In any event, the only purported support that Nanosys cites for its claim that QDV

14    specifically intended to induce infringement of the '621 patent is that QDV allegedly provided

15    generic instructions to its customers as to how to use the accused ColorIQ technology.  But it is

16    well established that merely alleging that the defendant instructs its customers how to use the

17    accused products without more **does not show specific intent to infringe a patent.**  *See Metro-*

18    *Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 937 (2005) (stating that mere

19    "ordinary acts incident to product distribution, such as offering customers technical support or

20    product updates" does not alone support liability for inducement); *Vita-Mix Corp. v. Basic*

21    *Holding, Inc.*, 581 F.3d 1317, 1329 n.2 (Fed. Cir. 2009) (explaining that a plaintiff cannot show

22    specific intent to induce infringement by alleging merely that "a user following the [defendant's]

23    instructions may end up using the device in an infringing way").

24    There is good reason for this:  virtually all product companies provide instructions to

25    their customers.  If merely describing the operation of the accused features were sufficient to

26    show specific intent, there would be little distinction between a claim of direct infringement—for

27    which a plaintiff must show the operation of the accused features—and a claim that the

28

defendant induced infringement by specifically intending to cause infringement. But that is not the law. *See Unisone Strategic IP, Inc. v. Life Tech. Corp.*, No. 13-cv-1278, 2013 WL 5729487, at *3 (S.D. Cal. Oct. 22, 2013) (finding allegation that "Defendant provides instruction, technical support, and training" for its products insufficient to establish affirmative intent to induce infringement); *Intellectual Ventures I LLC v. Bank of Am., Corp.*, No. 3:13-cv-358-RJC-DSC, 2014 WL 868713, at *2 (W.D.N.C. Mar. 5, 2014) (dismissing inducement claim with prejudice and explaining that "Plaintiffs merely argued that Defendants advertised the accused products on its website. This argument fails to mention any facts that demonstrate that Defendants specifically intended for their customers to infringe the asserted patent.").

The instructions that Nanosys cites in its amended complaint do not contain any indication or suggestion that QDV specifically intended its customers to infringe the '621 patent. Nanosys argues that QDV's instructions inform customers that ColorIQ is a tube of quantum dots, that the tube can be placed "atop" a blue LED light bar, that ColorIQ provides color benefits, and that ColorIQ can be customized to different customers' displays. (*See* Dkt. 36 [Amended Complaint] ¶¶ 169-72.) At best, these instructions merely describe the ***functionality*** of ColorIQ and show that the technology can work in a certain way; they in no way show that QDV ***specifically intended*** its customers to infringe the '621 patent. *See Memory Integrity,* 2015 WL 7185462, at *9-10 (reference to the defendant's product instructions is not sufficient to show a specific intent to infringe); *Straight Path IP Grp. Inc. v. Vonage Holdings Corp.*, No. 14-cv-502, 2014 WL 3345618, at *2 (D.N.J. July 7, 2014) (allegations that the defendants instructed customers how to use the accused products is insufficient to establish that "Defendants *specifically intended* for the induced acts to infringe" (emphasis in original)).

The facts of the *Memory Integrity* case are closely analogous to the circumstances presented here. There, the plaintiff alleged induced infringement by relying on "several examples of [the defendant's] instructions and technical support" explaining how to use the accused products, including "product manuals, data sheets, presentations, instructions, and other materials." *Memory Integrity*, 2015 WL 7185462, at *1-5, 7. The plaintiff alleged that the

instructions described infringement—just as Nanosys alleges here.  *Id.* at *9.  The court, however, held that the fact that the defendant instructs its customers how to use the accused products—even if following the instructions results in infringement—simply is not enough to demonstrate the specific intent to induce infringement:

> For each claim of induced infringement, Memory Integrity provides several examples of Intel's instructions and technical support.  Memory Integrity asserts that these documents describe functionality that could infringe a claim in the relevant patent . . . . Nonetheless, the [Second Amended Complaint] does not contain facts supporting a reasonable inference that Intel ***specifically intended its customers to infringe*** Memory Integrity's patents.

*Id.* at *9.  Because of the plaintiff's repeated failed attempts to plead inducement, the court dismissed the inducement claims with prejudice.  *Id.* at *10.  Here, where Nanosys has for the second time failed to provide any facts to show that QDV specifically intended to infringe the '621 patent, the same result is appropriate.

### B.    Nanosys' Contributory Infringement Claims Should Be Dismissed With Prejudice

Nanosys also has failed to correct the deficiencies in its contributory infringement allegations.  To state a claim for contributory infringement of the '524 and '363 patents, Nanosys was required to allege specific facts showing that:  (i) the accused components are "a material part of the invention"; (ii) the accused components have no "substantial non-infringing use"; (iii) ***QDV knew*** that the accused components were "especially made or especially adapted" to infringe the '524 and '363 patents; and (iv) a third party used the accused components to directly infringe the '524 and '363 patents.  *See Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1312 (Fed. Cir. 2005) ("In order to succeed on a claim of contributory infringement, in addition to proving an act of direct infringement, plaintiff must show that defendant knew that the combination for which its components were especially made was both patented and infringing, and that defendant's components have no substantial non-infringing uses.") (internal quotation and citation omitted).  Nanosys' amended complaint fails to meet this standard for two reasons.

1    ***First***, Nanosys does not allege a single fact showing that the accused ColorIQ technology

2    has no substantial non-infringing uses.  Instead, just as it did in its initial complaint, Nanosys

3    simply copies-and-pastes the same generic sentence that asserts—without any support or

4    explanation—that ColorIQ has no substantial non-infringing uses.  (Dkt. 36 [Amended

5    Complaint] ¶¶ 131, 137, 147, 153.)  There is good reason why Nanosys does not plead any facts

6    to support this claim:  the documents that Nanosys itself cites in its amended complaint on their

7    face show that ColorIQ ***does*** have substantial non-infringing uses, even accepting Nanosys'

8    allegations as true:

9    • Nanosys argues that ColorIQ infringes the '524 and '363 patents because tubes of

10    quantum dots are placed on top of blue LEDs.  (***Id.*** at ¶¶ 138, 154.)

11    • But the ***same documents*** that Nanosys cites for this claim make clear that this is ***not*** the

12    only way ColorIQ can be used.  Quantum dots can also be placed in film or in LEDs—

13    neither of which Nanosys accuses of infringement.  (***See*** Dkt. 36-14 [2015 QDV

14    Presentation] at 18; Dkt. 36-16 [2015 Steckel Paper] at 297, Fig. 3 (same).)

15    Nanosys' failure to provide any facts showing that ColorIQ does not have any substantial

16    non-infringing uses requires dismissal of Nanosys' contributory infringement claims.  ***See***

17    ***Superior Indus., LLC v. Thor Global Enters. Ltd.***, 700 F.3d 1287, 1296 (Fed. Cir. 2012)

18    (affirming dismissal of contributory infringement claim where plaintiff failed to allege facts

19    showing that the accused products did not have a substantial noninfringing use); ***Windy City***,

20    2016 WL 3361858, at *6 (dismissing contributory infringement claim because plaintiff failed to

21    allege facts showing that the accused products have no substantial non-infringing uses); ***U.S.***

22    ***Ethernet Innovations,*** 2013 WL 4112601, at *3 (dismissing contributory infringement claims

23    because references to product instructions are insufficient to show that there are no substantial

24    non-infringing uses); ***Pragmatus Telecom, LLC v. Ford Motor Co.***, No. 12-92-RGA, 2012 WL

25    2700495, at *1 (D. Del. July 5, 2012) (dismissing contributory infringement claim because the

26    plaintiff's allegation that the infringing systems have no substantial non-infringing uses "are

27    supported by no facts"); ***Redd Grp., LLC v. Glass Guru Franchise Sys., Inc.*** No. 12-cv-04070-

28

JST, 2013 WL 3462078, at *5 (N.D. Cal. July 8, 2013) (dismissing contributory infringement claim where complaint merely alleges that the accused product "has no apparent non-infringing uses" without any explanation).

*Second*, Nanosys' contributory infringement claims fail for the additional and independent reason that Nanosys does not allege any facts showing that *QDV knew* that ColorIQ was "*especially made*" or "*especially adapted*" to infringe the '524 and '363 patents.  Again, Nanosys fails to allege a single fact showing that QDV even knew of the '524 and '363 patents before this case was filed.  It alleges only that QDV knew "or should have known" of the patents and that unidentified QDV employees were allegedly aware of unidentified developments in the industry.  (Dkt. 36 [Amended Complaint] ¶¶ 130, 146.)  Nanosys also fails to allege any facts showing that QDV knew that that Color IQ was especially made to infringe these patents.  It merely cites to generic advertising statements (*id.* ¶¶ 139,155) without any attempt to explain how these statements could indicate that QDV *knew* that ColorIQ was especially made to infringe.  Without pleading any facts showing that QDV actually knew of the '524 and '363 patents or that QDV knew that ColorIQ was especially made to infringe those patents, Nanosys cannot maintain its contributory infringement claims.  *See Commil*, 135 S. Ct. at 1926 ("Like induced infringement, contributory infringement requires knowledge of the patent in suit and knowledge of patent infringement."); *CAP Co  v. McAfee, Inc.*, Nos. 14-cv-05068-JD, 14-cv-05071-JD, 2015 WL 3945875, at *3 (N.D. Cal. June 26, 2015) ("Whether cast as contributory or induced, indirect infringement requires that the defendant's conduct occurred after it knew of the patents-in-suit.").

Despite now having had two chances to plead contributory infringement, Nanosys still has not been able to muster any facts showing that the accused QDV technology has no non-infringing uses or that QDV knew that the accused technology was especially made or adapted to infringe.  Nanosys' contributory infringement claims should be dismissed with prejudice.

### C.      Nanosys' Willful Infringement Claims Should Be Dismissed With Prejudice

Finally, Nanosys' amended willful infringement allegations are again fatally flawed.  On June 13, 2016—before Nanosys filed its amended complaint—the Supreme Court clarified the standard for the award of enhanced damages in *Halo*.  The Court rejected the two-part analysis of willful infringement that required evidence that:  (1) the infringer acted despite an "objectively high likelihood of infringement" and (2) the risk of infringement was known or so obvious that it should have been known to the defendant.  *Halo*, 2016 WL 3221515, at *8-9.  Instead, the Court held that willful infringement must be analyzed under the Court's general discretion as to whether to enhance damages under Section 284 of the Patent Statute; specifically, the plaintiff must show that the defendant acted ***egregiously***.  *Id.* at *8-9, 11.  The Supreme Court explained, for example, that enhancement of damages may be appropriate where the defendant acted as a ***"'wanton and malicious pirate' who intentionally infringes another's patent—with no doubts about its validity or any notion of a defense—for no purpose other than to steal the patentee's business***."  *Id.* at *8 (internal citation omitted).  The Supreme Court was explicit that enhanced damages "are not to be meted out in a typical infringement case" or in "garden-variety cases."  *Id.* at *7, 11.

Nanosys does not even ***attempt*** to satisfy this high threshold.  Nanosys' amended complaint—like its initial complaint—alleges willfulness under the old, two-part willfulness test by merely asserting without any evidence that QDV acted "with willful, intentional, and reckless disregard of the objectively high likelihood that its acts constitute infringement." (Dkt. 36 [Amended Complaint] ¶¶ 44, 54, 64, 74, 83, 92, 101.)  This conclusory, copied-and-pasted assertion does not include a single fact that even suggests that QDV's actions were egregious.  (*Id.*)  Nanosys' complete failure to plead facts under the relevant legal standard requires dismissal of its willful infringement claims.  *See Monolithic Power*, 127 F. Supp. 3d at 1077 (dismissing willful infringement claim because plaintiff did not allege "any facts that would allow a trier of fact to conclude that the defendants acted with a level of intent that is more culpable that the typical infringer"); *Vasudevan Software, Inc. v. TIBCO Software Inc.*, No. C 11-

1   06638 RS, 2012 WL 1831543, at *4 (N.D. Cal. May 18, 2012) (holding that "a bare recitation of

2   the required legal elements for willful infringement is inadequate") (internal citation omitted).

3        Nanosys' allegation that QDV "knew or should have known" of the 7 patents for which

4   Nanosys asserts willfulness does not overcome these deficiencies.  As an initial matter, Nanosys

5   does not provide any facts to support this allegation.  Nanosys vaguely refers to "discussions"

6   between QDV and Nanosys (Dkt. 36 [Amended Complaint] ¶¶ 41, 51, 81, 90, 99), but never

7   identifies these discussions or explains what was supposedly discussed—including whether and

8   how any of the asserted patents were ever discussed.  Nanosys also alleges that QDV's co-

9   founders are named inventors on the asserted patents and were Nanosys founders (*id.* ¶¶ 41, 51,

10  61, 71, 81, 90, 99), but does not explain who it is referring to or what specific role or knowledge

11  these individuals allegedly had relating to the asserted patents.  But in any event, knowledge of

12  the asserted patents alone is not sufficient to show egregious behavior to maintain a claim of

13  willful infringement.  *See Halo,* 2016 WL 3221515, at *7 (enhanced damages requires "willful,

14  wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant" conduct); *see also id.* at

15  *12 (Breyer, J., concurring) (explaining that "the Court's references to 'willful misconduct' do

16  not mean that a court may award enhanced damages simply because the evidence shows that the

17  infringer knew about the patent *and nothing more*.") (emphasis in original).

18       Nanosys' copied-and-pasted willfulness claims are similar to the allegations that the court

19  dismissed in *Monolithic Power*.  There, the plaintiff asserted willful infringement by simply

20  alleging without supporting facts that the defendant willfully infringed—just as Nanosys does in

21  its amended complaint.  Because the plaintiff failed to plead any facts showing *how* the

22  defendant's alleged infringement was willful, the court dismissed the willfulness claim:

23       [Plaintiff's] ***allegations are mostly a boilerplate recitation of the legal elements of the
    claim*** . . . . In other words, [plaintiff] has not, in its allegations relating to willful

24       infringement, included any facts that would allow a trier of fact to conclude that the
    defendants acted with a level of intent more culpable than the typical infringer.

25  

26  *Monolithic Power*, 127 F. Supp. 3d at 1077.  Nanosys' second attempt to assert willful

27  infringement—in which it fails to even address the relevant standard—also should be dismissed

28  with prejudice.

---

Case No. 4:16-cv-01957-YGR      17         QD VISION INC.'S MOTION TO DISMISS
PLAINTIFFS' AMENDED CLAIMS OF INDUCED,
CONTRIBUTORY, AND WILLFUL INFRINGEMENT

## IV.    CONCLUSION

Nanosys rushed to file this case in attempt to disrupt QDV's business.  Its inability—after two attempts—to plead facts supporting its induced infringement, contributory infringement, and willful infringement allegations confirms that there is no factual basis for such claims. Accordingly, QDV respectfully requests that the Court dismiss these claims with prejudice.


Dated: June 28, 2016                              Respectfully submitted,

                                                  /s/ Michael J. Summersgill
                                                  Michael J. Summersgill (*pro hac vice*)
                                                  michael.summersgill@wilmerhale.com
                                                  WILMER CUTLER PICKERING
                                                  HALE AND DORR LLP
                                                  60 State Street
                                                  Boston, MA 02109
                                                  Telephone: 617-526-6000
                                                  Facsimile: 617-526-5000

                                                  Donald R. Steinberg (*pro hac vice*)
                                                  Jordan L. Hirsch (*pro hac vice*)
                                                  donald.steinberg@wilmerhale.com
                                                  jordan.hirsch@wilmerhale.com
                                                  WILMER CUTLER PICKERING
                                                  HALE AND DORR LLP
                                                  60 State Street
                                                  Boston, MA 02109
                                                  Telephone: 617-526-6000
                                                  Facsimile: 617-526-5000

                                                  Arthur W. Coviello (SBN 291226)
                                                  arthur.coviello@wilmerhale.com
                                                  WILMER CUTLER PICKERING
                                                  HALE AND DORR LLP
                                                  950 Page Mill Road
                                                  Palo Alto, California 94304
                                                  Telephone: (650) 858-6000
                                                  Facsimile: (650) 858-6100

                                                  *Counsel for Defendant QD Vision, Inc.*

1

**<u>CERTIFICATE OF SERVICE</u>**

2

I hereby certify that on June 28, 2016, I electronically filed the above document with the

3

Clerk of the Court using CM/ECF which will send electronic notification of such filing to all

4

registered counsel.

5

6

By: <u>/s/ Michael J. Summersgill</u>
Michael J. Summersgill

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

QD VISION INC.'S MOTION TO DISMISS
PLAINTIFFS' AMENDED CLAIMS OF INDUCED,
CONTRIBUTORY, AND WILLFUL INFRINGEMENT