DOUGLAS E. LUMISH (Bar No. 183863)
doug.lumish@lw.com
RICHARD G. FRENKEL (Bar No. 204133)
rick.frenkel@lw.com
NICHOLAS YU (Bar No. 298768)
nicholas.yu@lw.com
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, California 94025
Telephone:  +1.650.328.4600
Facsimile:  +1.650.463.2600

GREGORY K. SOBOLSKI (Bar No. 267428)
gregory.sobolski@lw.com
LATHAM & WATKINS LLP
505 Montgomery St. #2000
San Francisco, California 94111
Telephone:  +1.415.391.0600
Facsimile:  +1.415.395.8095

Attorneys for Plaintiffs NANOSYS, INC.
and MASSACHUSETTS INSTITUTE OF
TECHNOLOGY

JAMES L. DAY (SBN 197158)
jday@fbm.com
WINSTON LIAW (SBN 273899)
wliaw@fbm.com
FARELLA BRAUN + MARTEL LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
Telephone: +1.415.954.4400
Facsimile: +1.415.954.4480

Attorneys for Plaintiff THE REGENTS OF
THE UNIVERSITY OF CALIFORNIA

ARTHUR W. COVIELLO (SBN 291226)
arthur.coviello@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

MICHAEL J. SUMMERSGILL (*pro hac vice*)
DONALD R. STEINBERG (*pro hac vice*)
JORDAN L. HIRSCH (*pro hac vice*)
michael.summersgill@wilmerhale.com
donald.steinberg@wilmerhale.com
jordan.hirsch@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

Attorneys for Defendant QD VISION, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| NANOSYS, INC., THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, and MASSACHUSETTS INSTITUTE OF TECHNOLOGY,<br><br>    Plaintiffs,<br><br>    v.<br><br>QD VISION, INC.,<br><br>    Defendant. | CASE NO.  4:16-cv-1957<br><br>**JOINT CASE MANAGEMENT STATEMENT** |

1      Pursuant to the Court's June 13, 2016 Order (D.I. 35), Plaintiffs Nanosys, Inc.

2 ("Nanosys"), The Regents of the University of California ("UC"), and Massachusetts Institute of

3 Technology ("MIT") (collectively "Plaintiffs") and Defendant QD Vision, Inc. ("QDV") submit

4 this Joint Case Management Statement.

5 **I.    JURISDICTION AND SERVICE**

6      This is an action for, among other claims, thirteen claims of patent infringement arising

7 under the patent laws of the United States of America, Title 35 of the United States Code, as well

8 as counterclaims that the asserted patents are invalid, among other counterclaims. The Court has

9 subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a). Venue is

10 proper in his judicial district pursuant to  28 U.S.C. §§ 1391(b) and (c) and 1400(b).

11 **II.    FACTS**

12     <u>**Plaintiffs' Statement:**</u>

13      Founded in 2001 to commercialize technology Nanosys's founders developed at MIT and

14 UC, Nanosys is a leading innovator in the development of quantum dots, a state of the art

15 nanocrystal semiconductor technology used in ultra-high definition displays being

16 commercialized by many of the world's leading display companies. Recognizing the potential of

17 quantum dot technology early on, Nanosys invested millions of dollars in developing a

18 significant patent portfolio. As part of that effort, Nanosys partnered with leading academic

19 institutions, including MIT and the Lawrence Berkeley National Laboratory (which is a U.S.

20 Department of Energy National Laboratory managed and operated by UC). As a result of those

21 partnerships, Nanosys obtained exclusive licenses to numerous patents, including those at issue

22 in this case, which cover various aspects of quantum dot technology. One of QDV's founders,

23 Dr. Moungi Bawendi, is a named inventor on seven of the patents. QDV has availed itself of Dr.

24 Bawendi's knowledge of the patents to produce its infringing products.

25      On April 14, 2016, Plaintiffs filed their original Complaint against QDV, alleging direct,

26 indirect, and willful infringement of U.S. Patent Nos. 6,207,229 (the "'229 patent"); 6,322,901

27 (the "'901 patent"); 6,576,291 (the "'291 patent"); 6,821,337 (the "'337 patent"); 7,138,098 (the

28 "'098 patent"); 8,071,359 (the "'359 patent"); 8,288,152 (the "'152 patent"); 8,288,153 (the

"'153 patent"); 8,481,112 (the "'112 patent"); 8,481,113 (the "'113 patent"); 8,648,524 (the "'524 patent"); 9,063,363 (the "'363 patent"); and 9,182,621 (the "'621 patent") (collectively, the "Asserted Patents").   On June 14, 2016, Plaintiffs filed and served a First Amended Complaint ("FAC") alleging similar infringement claims of the same patents.  Plaintiffs seek damages and injunctive relief, as well as a finding that this case is exceptional under 35 U.S.C. § 285.  QDV answered some claims (D.I. 46) and moved to dismiss Plaintiffs' claims of indirect and willful infringement on June 28, 2016 (D.I. 45.)  Plaintiffs responded to QDV's motion to dismiss on July 12, 2016.  (D.I. 47.)  QDV replied on July 19, 2016.  (D.I. 48.)

Nanosys objects to QDV's use of a Rule 408 discussion between the parties' principals below, and will not respond substantively to further violate the settlement privilege.  *See, e.g.*, *United States v. Contra Costa Cty. Water Dist.*, 678 F.2d 90, 92 (9th Cir. 1982) ("[P]ublic policy favoring out-of-court settlement necessitates the inadmissibility of negotiations in order to foster frank discussion.").  Suffice it to say, Nanosys disagrees with the arguments QDV makes concerning these statements, and notes that QDV's paraphrasing of the parties' discussions is both inaccurate and out of context.

**Defendant's Statement:**

Since its founding in 2004, QDV has revolutionized quantum dot technology—a technology that uses extremely small particles called nanocrystals to produce light with enhanced color for use in ultra-high definition displays and other applications.  As a result of its innovations, QDV now owns more than 180 patents and patent applications, has been recognized as a leader in quantum dot technology (including winning the 2016 CES Innovation Award), and has achieved significant success in the quantum dot market.  QDV also has partnered with Plaintiff MIT and is the exclusive licensee of many MIT patents.

Three days after Plaintiffs filed their complaint, the Chief Executive Officer of Nanosys, Jason Hartlove, told the Chairman of QDV's Board of Directors, Stephen Ward, that Nanosys' goal was to acquire QDV and that some of Nanosys' directors believed that QDV would be more willing to negotiate if it was forced into bankruptcy by the litigation.  With that as an apparent goal, Plaintiffs assert an unreasonably large number of patents—***13 patents with 392 claims***—

despite the fact that there is no way Plaintiffs could ever bring so many patent claims to trial.[1] Indeed, Plaintiffs concede below that they cannot and will not assert 392 claims at trial. Nonetheless, Plaintiffs refuse to narrow their allegations at this stage.  Forcing the parties to litigate 13 patents with hundreds of claims will: (1) impose a massive burden on the Court (e.g. require claim construction of the claims of 13 patents) and a massive and unfair cost on QDV (e.g. requiring it to develop invalidity defenses for hundreds of claims); (2) effectively conceal from QDV the actual claims Plaintiffs will ultimately assert at trial; and (3) allow Plaintiffs to cherry-pick their ultimate claims only after seeing QDV's defenses.  For these and other reasons, courts have routinely limited plaintiffs to no more than a total 15 asserted claims. *Memory Integrity, LLC v. Intel Corp.*, No. 3:15-CV-00262-SI, 2015 WL 6659674, at *2 (D. Or. Oct. 30, 2015) ("Decisions across the country support a proposition that a limit of approximately 15 claims is not inappropriate in patent litigation.").

QDV respectfully submits that Plaintiffs' infringement allegations are without merit.  As set forth below, QDV will also ask the court to require Plaintiffs to limit the number of asserted claims to 15 and delay discovery and claim construction proceedings until after Plaintiffs have done so.

## III.   LEGAL ISSUES

The key legal issues concern the following subjects:

A.     Whether QDV directly infringes the '229, '901, '112, '113, '291, '337, '098, '359, '152, and '153 patents, literally and/or under the doctrine of equivalents;

B.     Whether QDV induces infringement of the '621 patent, literally and/or under the doctrine of equivalents;

---

[1]     Plaintiffs assert above that Mr. Hartlove's comments were part of a "Rule 408 discussion."  Mr. Hartlove did not invoke Rule 408 at any point during the discussion with QDV. Indeed, the meeting between Mr. Hartlove and Mr. Ward was scheduled *before* the litigation was even filed.  Moreover, the Ninth Circuit has expressly held that statements made during settlement discussions are relevant—and even admissible—when they go to issues other than liability.  *See Rhoades v. Avon Prods., Inc.* 504 F.3d 1151, 1160-1162 (9th Cir. 2007) (even where statements made explicitly as part of settlement discussions, Rule 408 does not prohibit reliance thereon when "offered for [other] purposes").  That is the case here, where Mr. Hartlove's comments show the need to narrow this case.

C.      Whether QDV contributes to infringement of the '524 and '363 patents, literally and/or under the doctrine of equivalents;

D.      Whether QDV's alleged infringement of the '229, '901, '112, '113, '291, '337, and '098 patents is willful;

E.      Whether QDV is barred from asserting the invalidity of the '229, '901, '112, '113, '291, '337, and '098 by the doctrine of assignor estoppel;

F.      Whether Plaintiffs are entitled to the relief specified in the FAC;

G.      Whether the claims of '229, '901, '112, '113, '291, '337, '098, '359, '152,'153, '621, '524, and '363 patents are invalid;

H.      Whether the claims of '229, '901, '112, '113, '291, '337, '098, '359, '152,'153, '621, '524, and '363 patents are unenforceable;

I.      Whether Plaintiffs' claims are barred or limited based on any affirmative defense asserted by QDV, including estoppel, laches, waiver, acquiescence, unclean hands, extraterritoriality, or a limitation on damages;

J.      The amount of alleged damages and other monetary relief, if any, for which QDV is liable, assuming liability is proven.

## IV.    MOTIONS

As of the date of this filing, QDV's Motion to Dismiss Plaintiffs' Amended Claims of Induced, Contributory, and Willful Infringement is pending.  The Court heard oral argument for this motion on August 9, 2016.

## V.     AMENDMENT OF PLEADINGS

The parties propose that the deadline for amending pleadings to add parties, claims, or counterclaims be set for September 13, 2016.

## VI.    EVIDENCE PRESERVATION

The parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines") and have met and conferred pursuant to Federal Rule of Civil Procedure 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action.  Each party represents that it preserved

1  information relevant to this action.

2  **VII.   DISCLOSURES**

3  The parties will exchange initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1)(A) on or

4  before August 15, 2016.

5  **VIII.   DISCOVERY**

6  **A.   Discovery to Date**

7  To date, Plaintiffs have served the following discovery:

| Document | Service Date |
|---|---|
| Plaintiff's First Set of Requests for Production (Nos. 1-47) to Defendant | August 3, 2016 |
| Plaintiff's First Set of Interrogatories (Nos. 1-11) to Defendant | August 3, 2016 |
| Plaintiff's Second Set of Requests for Production (Nos. 48-66) to Defendant | August 12, 2016 |

To date, Defendant has served the following discovery:

| Document | Service Date |
|---|---|
| Defendant's First Set of Requests for Production (Nos. 1-23) to Plaintiffs | August 9, 2016 |
| Defendant's First Set of Interrogatories (Nos. 1-18) to Plaintiffs | August 9, 2016 |
| Defendant's Notice of Deposition to Jason Hartlove | August 9, 2016 |

19  **B.   Scope of Anticipated Discovery**

20  The parties intend to pursue discovery relating to the factual and legal issues raised by the

21  pleadings.  The parties intend to pursue further discovery in the form of requests for production

22  of documents and things, requests for admission, interrogatories, depositions, and other forms of

23  discovery authorized by the Federal Rules of Civil Procedure, including discovery of non-parties.

24  The parties agree to confer in good faith to resolve disputes if need arises.

25  **Plaintiffs' Statement:**

26  Plaintiffs anticipate pursuing discovery on the causes of action in the First Amended

27  Complaint and QDV's Counterclaims, including, but not limited to, the following topics: (1)

28  QDV's accused products, including but not limited to the operation and properties of the accused

products and QDV's development of the accused products; (2) QDV's methods and processes for producing its accused products; (3) QDV's knowledge of the Asserted Patents; (4) QDV's knowledge of Nanosys's technology and products; (5) QDV's efforts to market, sell and/or otherwise persuade customers to use the accused products; (6) information QDV provides to others relating to its accused products; (7) QDV's financial information, including, but not limited to, financial information relating to its accused products and Nanosys's theories of damages.

**Defendant's Statement:**

QDV anticipates pursuing discovery on Plaintiffs' causes of action in the First Amended Complaint and QDV's Counterclaims, including, but not limited to, the following topics: (1) the Asserted Patents, including ownership, licensing, inventorship, conception, and reduction to practice of the alleged inventions claimed in the Asserted Patents; (2) the filing and prosecution of the applications for the Asserted Patents (and any related U.S. patents and any foreign counterpart or related foreign patent); (3) any inequitable conduct that may have occurred relating to the Asserted Patents; (4) defenses to claims based on the Asserted Patents (e.g., non-infringement, invalidity, unenforceability, etc.), including prior art to the Asserted Patents and the applicant's knowledge, awareness, or possession of the same; (5) information related to laches or estoppel, including information related to the Plaintiffs' knowledge of QDV's technology years before this suit was filed; (6) information relating to potential damages, including any attempted licensing or other attempts at monetization relating to the Asserted Patents; (7) Plaintiff's knowledge of the accused products and services in this case, including its pre-suit investigation; (8) the acquisition of the Asserted Patents by MIT and UC, and the licensing of the Asserted Patents to Nanosys;  (9) alternatives to the alleged inventions claimed in the Asserted Patents.

### C.  Changes to Discovery Limitations

The presumptive limits on discovery provided by the Federal Rules of Civil Procedure and this Court's Local Rules and Standing Orders shall apply, except as follows:

### 1.   Interrogatories

The parties propose that an interrogatory directed to multiple patents-in-suit and/or multiple accused products should not count as multiple subparts due to the reference to multiple patents-in-suit and/or multiple accused products and shall count as one (1) interrogatory. The parties further propose that each side (not each party) be limited to serving forty (40) total interrogatories, given the large scope of the case with thirteen patent claims.  Each interrogatory served on Plaintiffs by QDV shall be answered by each Plaintiff but shall count as one (1) of QDV's interrogatories.

### 2.   Depositions

Hours limits set forth below regarding depositions means hours on the record—i.e., excluding breaks.  Unless otherwise stipulated by the parties or ordered by the Court, each deposition is limited to 1 day of 7 hours.  The parties shall propose that each side (not each party) be limited to taking up to 70 hours of fact depositions, not including depositions of non-parties. Included within these limits are depositions of the parties pursuant to Federal Rule of Civil Procedure 30(b)(6).  With respect to Rule 30(b)(6), any party may be served with separate deposition notices covering different topics at different times, but a party shall not be required to designate a corporate representative regarding the same topic more than once.  The parties will meet and confer in good faith after disclosure of expert reports to determine the appropriate number an length of time for expert depositions.  The parties agree to meet and confer should a party desire modification of the aforementioned limits on discovery.

### 3.   Requests for Admission

The parties propose that a request for admission directed to multiple patents-in-suit and/or multiple accused products should not count as multiple requests and shall count as one (1) request for admission.  The parties further propose that each side (not each party) be limited to serving seventy-five (75) total requests for admission, not including requests for admission related to the authentication of documents.  Each request for admission served on Plaintiffs by QDV shall be answered by each Plaintiff but shall count as one (1) of QDV's requests for admission.

### D.    Expert Work Product

The parties agree that counsel and experts need not preserve drafts of expert reports (partial or complete), notes, and other evidence of communications between counsel and experts (or with any intermediaries between counsel and experts) on the subject of the experts' actual or potential testimony, unless relied upon by the expert in forming any opinions disclosed in written reports provided in this litigation.  Further, the parties agree that neither party need produce communications between counsel and expert witnesses, communications between an expert and others, including staff members, who work at the direction of the expert to support the expert, or drafts of expert reports, unless relied upon by the expert in forming any opinions disclosed in written reports in this litigation.

### E.    Service

Pursuant to Federal Rule of Civil Procedure 5(b)(2)(E), the parties agree to service via email, which will be deemed as hand delivery for purposes of calculating any response time. The parties agree to include the case name in the subject line for documents served by electronic means.

### F.    Discovery of ESI

The parties are still negotiating the terms of a stipulated order regarding the discovery of electronically store information ("ESI Agreement").  If the parties have not reached an agreement before he Case Management Conference, the parties may seek the Court's guidance on this issue at that time.

### G.    Protective Order

The parties are still negotiating the terms of a stipulated protective order and will continue to meet and confer to see whether they can resolve the remaining issues.  If the parties have not reached an agreement before the Case Management Conference, the parties may seek the Court's guidance on this issue at that time.

### H.    Privilege and Privilege Logs

The parties agree that the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from

1  discovery in this case or in any other federal or state proceeding, pursuant to Federal Rule of
2  Civil Procedure 502(d).   For example, the mere production of privileged or work-product-
3  protected documents in this case as part of a mass production is not itself a waiver in this case or
4  in any other federal or state proceeding.

5       The parties agree to provide a log of otherwise responsive documents for which a claim
6  of privilege is made.   The parties are still negotiating the exact scope of the privilege log, but in
7  any event will provide information sufficient for the receiving party to determine the basis for
8  the claim of privilege

9  **IX.  CLASS ACTIONS**

10       This matter is not a class action.

11  **X.  RELATED CASES**

12       The '901 patent is currently the subject of Inter Partes Review No. IPR2015-00528.   The
13  Board issued a Final Written Decision on July 5, 2016, cancelling claims 1, 2, 4, 13, 14, 16, 24,
14  31, 32, 35-41, 43, 44, and 47-50 of the '901 patent.

15  **XI.  RELIEF**

16       **Plaintiffs' Statement:**

17       Plaintiffs seek the relief prayed for in the First Amended Complaint, including:

18       (1) judgement that QDV has infringed, directly and indirectly, the Asserted Patents, and
19  that such infringement was willful; (2) preliminary and permanent injunctive relief prohibiting
20  QDV from infringing, directly or indirectly, any claims of the Asserted Patents and soliciting
21  business or customers using any information derived from its infringement; (3) monetary
22  damages, including lost profits and a reasonable royalty, sufficient to compensate Plaintiffs for
23  QDV's infringement prior to entry of an injunction prohibiting such infringement, and including
24  prejudgment and post judgment interest; (4) an order directing QDV to deliver all infringing
25  products to Plaintiffs for destruction at Plaintiffs' option; (5) enhanced damages of three times
26  the amount for QDV's willful infringement; (6) an order finding this case exceptional under 35
27  U.S.C. § 285 and an award of Plaintiffs' attorneys' fees in this action, including prejudgment
28  interest on such fees; (7) an accounting and supplemental damages for all damages occurring

1    after the period for which damages discovery is taken, and after discovery closes, through the

2    Court's decision regarding the imposition of a permanent injunction; (8) Plaintiffs' costs and

3    expenses of this suit as prevailing parties; and (9) any other relief that the Court deems just and

4    proper.

5          **Defendant's Statement:**

6          QDV seeks the relief detailed in its Partial Answer, Defenses, and Counterclaims to

7    Plaintiff's First Amended Complaint (D.I. 46).   QDV seeks: an order dismissing Plaintiffs'

8    complaint in its entirety, with prejudice; a judgment in favor of QDV against Plaintiffs; a

9    judgment declaring that the claims of the Asserted Patents have not been infringed by QDV; a

10   judgment declaring that the claims of the Asserted Patents are invalid; a judgment declaring that

11   this case is an exceptional case under 35 U.S.C. § 285; an award of costs (including expert fees),

12   disbursements, and reasonable attorneys' fees incurred by QDV in this action; and any other

13   relief to which QDV may be entitled, or which the Court deems just and proper.

14   **XII.   SETTLEMENT AND ADR**

15         The parties have agreed to participate in private mediation after the parties' positions are

16   further disclosed and developed.   The parties have complied with ADR L.R. 3-5.   The Court

17   entered the Stipulation and Order Selecting ADR Process on June 24, 2016.

18   **XIII.   CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES**

19         On April 18, 2016, Nanosys and MIT declined consent to have a magistrate judge

20   conduct further proceedings including trial and entry of judgment.  D.I. 14.

21   **XIV.   OTHER REFERENCES**

22         The parties do not believe this case is suitable for reference to binding arbitration, a

23   special master, or the Judicial Panel on Multidistrict Litigation.

24   **XV.   NARROWING OF ISSUES**

25         **Plaintiffs' Statement:**

26         Fact discovery has only recently begun and trial is too distant at this this time to

27   determine how best to expedite the presentation of evidence at trial, or whether bifurcation of

28   issues, claims, or defenses is appropriate.  Plaintiffs propose that the parties address these issues

1   as discovery proceeds.

2       QDV's counterclaims alleging that the '229, '901, '112, '113, '291, '337, and '098

3   patents are invalid are barred by the doctrine of assignor estoppel.  Plaintiffs expect that this

4   issue will be ripe for motion practice after discovery regarding QDV's development of its

5   accused products.

6       QDV argues for an early limitation of claims, as well as an early summary judgment

7   motion.  Neither is necessary.

8       As to QDV's request for Plaintiffs to immediately reduce the number of asserted claims,

9   Plaintiffs point out that the contention that there are 392 claims asserted in this case is inaccurate.

10  In the First Amended Complaint, Plaintiffs include one representative claim from each of the 13

11  patents at issue.  Plaintiffs will serve infringement contentions on September 9, 2016, which will

12  identify the claims asserted in this litigation.  Plaintiffs will not assert 392 patent claims; nor will

13  Plaintiffs seek to bring 392 claims to trial.  As such, QDV's complaints about the number of

14  claims is premature.  Plaintiffs propose that, following the service of Plaintiffs' Infringement

15  Contentions, the parties can meet and confer should QDV believe that reduction of claims is

16  necessary or appropriate.  If the parties are unable to reach a compromise at that time, the issue

17  will be ripe for consideration by the Court.  In any event, Nanosys asks that any reduction in

18  claims compelled by the Court should be accompanied by a proportional reduction in the number

19  of prior art references QDV can assert.[2]

20      QDV also requests an early summary judgment motion on invalidity of some unspecified

21  number of claims, and a stay of the case schedule pending this summary judgment motion.

22  QDV's request here is also premature because, again, Plaintiffs are not scheduled to provide their

23

24  [2]  The cases QDV cites support this approach.  In those cases, the reduction in the number of
    asserted claims occurred *after* the parties exchanged infringement and invalidity contentions and

25  engaged in fact discovery, and included a reciprocal reduction in prior art references.  *See, e.g.*,
    *Memory Integrity, LLC v. Intel Corp.*, No. 3:15-CV-00262-SI, 2015 WL 6659674, at *2 (D. Or.

26  Oct. 30, 2015) (noting that discovery had been ongoing for a year and that the defendant had
    provided both invalidity and non-infringement positions), *see also Adobe Sys. Inc. v. Wowza*

27  *Media Sys. LLC*, No. 11–cv–02243–JST, 2013 WL 9541126, at *1 (N.D. Cal. May 6, 2013)
    ("The parties have completed discovery, and Adobe is now in a position to determine its

28  strongest claims.").

1   list of asserted claims until September 9.  Moreover, to meet its clear and convincing burden and

2   the high bar for summary judgment of invalidity, QDV will almost certainly need to rely on

3   expert testimony, and Plaintiffs will respond with their own expert.  Deadlines for expert reports

4   and expert discovery are already on the schedule, and there is no reason to carve out a small

5   subset of the overall case in the way QDV has proposed.  On the contrary, QDV's proposal,

6   which on its face will not resolve the entire action, invites needless delay, a one-sided phasing of

7   issues, and piecemeal and redundant litigation which would waste the Court's and the parties'

8   resources.  This invitation should be rejected.  The Northern District of California Patent Local

9   Rules help "secure the just, speedy, and inexpensive determination of every action and

10   proceeding," Fed. R. Civ. P. 1, but QDV's proposal would slow the case substantially and make

11   it more expensive.  Plaintiffs respectfully request that the Court reject QDV's proposal.[3]

12          **Defendant's Statement:**

13          Plaintiffs assert an unreasonably large number of patents—***13 patents with 392 claims***—

14   and QDV expects it to assert hundreds of claims in its infringement contentions.  QDV believes

15   that it is not realistic for Plaintiffs to try this many patents and claims in a single proceeding.

16   Moreover, asserting such an unreasonable number of patents/claims will: (1) impose a massive

17   burden on the Court (e.g. require claim construction of the claims of 13 patents) and a massive

18   and unfair cost on QDV (e.g. requiring it to develop invalidity defenses for hundreds of claims);

19   (2) effectively conceal from QDV the actual claims Plaintiffs will ultimately assert at trial; and

20

21   [3] At 2 p.m. on the day this Joint Statement was due, QDV edited its portion to add citations to six
    new cases relating to its request to have Plaintiffs reduce their number of asserted patent claims
22   now, and stay the litigation pending a summary judgment motion of invalidity QDV intends to
    file.  Plaintiffs will be fully prepared to discuss all the cited authority at the CMC, but at first
23   glance, QDV's cases appear inapposite.  For example, in the *Medtronic Minimed* case, a
    reduction was ordered only after the plaintiff served its infringement contentions, seeking to
24   assert 255 claims.  2013 WL 3322248 at *2.  Plaintiffs have not served their infringement
    contentions here.  *VirtualAgility* and *Finjan* appear to be related to stays pending some form of
25   Patent Office review, where <u>all</u> of the claims at issue in the litigation were being reviewed by the
    Patent Office.  Again, this is not an issue in this case.  *SafeNet* involved a single patent that had
26   expired, such that the proposed summary judgment motion was potentially case dispositive.
    2015 WL 5853867, at *2.  Finally, in the *General Patent Corp.* case, the court was deciding
27   whether to bifurcate validity from infringement in the context of a situation where a single
    plaintiff had four separate cases against four accused infringers.  The Court decided to have an
28   initial validity trial.  1997 WL 1051899, at *2.  This situation is not a concern in this case.

1    (3) allow Plaintiffs to cherry-pick their ultimate claims only after seeing QDV's defenses.

2    Accordingly, QDV submits that this case can and should be narrowed in two ways:

3        *First*, courts have routinely required plaintiffs to limit their cases to approximately 15

4    asserted claims.  *See, e.g. Memory Integrity, LLC v. Intel Corp.*, No. 3:15-CV-00262-SI, 2015

5    WL 6659674, at *2 (D. Or. Oct. 30, 2015) ("Decisions across the country support a proposition

6    that a limit of approximately 15 claims is not inappropriate in patent litigation."); *see also, e.g.*,

7    *In re Katz*, 639 F.3d at 1310-1312 (affirming a limit of 16 claims per defendant from an original

8    1,975 claims); *Stamps.com Inc. v. Endicia, Inc.*, 437 F. App'x 897, 900-903 (Fed. Cir. 2011)

9    (affirming a limit of 15 claims from an original 629 claims across 11 patents); *Joao Control &*

10   *Monitoring Sys., LLC v. Ford Motor Co.*, No. 13-CV-13615, 2014 WL 106926 (E.D. Mich. Jan.

11   10, 2014) (ordering a limit of 15 claims across five patents); *Thought, Inc. v. Oracle Corp.*, No.

12   12-CV-05601-WHO, 2013 WL 5587559, at *3 (N.D. Cal. Oct. 10, 2013) (ordering a limit of 16

13   claims across seven patents); *Fenster Family Patent Holdings, Inc., Elscint Ltd.*, No. 04-cv-0038,

14   2005 WL 2304190 (D. Del. Sept. 20, 2005) (ordering a limit of 10 claims from an original 90

15   claims across five patents).  QDV submits that such a result is appropriate here and that

16   untilPlaintiffs' claims are appropriately limited, the case schedule should be delayed so that the

17   Court and parties are not forced to devote massive time and resources litigating dozens (or even

18   hundreds) of claims that will never be tried.  Courts have repeatedly required the plaintiff to limit

19   the number of asserted claims early in the case, before claim construction, fact discovery, and

20   expert discovery.  *See, e.g.*,  *Joao Control*, 2014 WL 645246, at *3 (ordering initial reduction to

21   25 claims at contention stage, to "allow the parties to obtain discovery as to those twenty-five

22   asserted claims," and then further reduction to 15 claims prior to claim construction); *Medtronic*

23   *Minimed Inc. v. Animas Corp.*, 2013 WL 3322248, at *2-3 (C.D. Cal. Apr. 5, 2013) (ordering

24   reduction of asserted claims to 36 prior to invalidity contentions and further reduction to 18

25   claims five months later); *Masimo Corp. v. Philips Elecs. N. Am. Corp.*, 918 F. Supp.2d 277, 284

26   (D. Del. 2013) (finding that "early claim reduction is warranted before claim construction

27   briefing" and ordering plaintiff to reduce number of asserted claims to 30 prior to deadline for

28   invalidity contentions and claim construction).

1   **Second,** while QDV asserts that all of Plaintiffs' asserted claims are invalid, a subset of

2   the claims of the '229, '901, '112, and '113 patents (owned by MIT) ("MIT Family 1 Patents")

3   predate the '359, '152, and '153 patents (owned by) ("UC Family 1 Patents") and disclose the

4   same subject matter claimed in the UC Family 1 Patents.  By way of example only, as shown

5   below, the claims of the '901 patent of the MIT Family 1 Patents disclose all elements of what is

6   claimed in claim 1 of '359 of the UC Family 1 Patents:

7

| US 8,071,359 (UC)<br>**Earliest Claimed Priority Date[4]: November 27, 1997** | US 6,322,901 (MIT)<br>**Filing date: November 13, 1997**<br>**Issue Date: November 27, 2001** |
|---|---|
| 1. A *luminescent semiconductor nanocrystal* composition, comprising: | "1. A coated *nanocrystal capable of light emission*, comprising:" |
| a *semiconductor core* comprising *a first semiconductor material*; | "1. a *core* comprising *a first semiconductor material*, said core being a member of a monodisperse particle population; and" |
| a *core-overcoating shell comprising a second semiconductor material* which is *different from the first semiconductor material*, wherein the core and core-overcoating shell form a core/shell nanocrystal; and | "1. *an overcoating uniformly deposited on the core comprising a second semiconductor material, wherein the first semiconductor material and the second semiconductor material are the same or different,*" |
| a polymer. | "18. The coated nanocrystal of claim 1 or 10, wherein the nanocrystal further comprises an organic layer on the nanocrystal outer surface."<br><br>"20. The coated nanocrystal of claim 18, wherein the organic layer comprises a moiety selected to exhibit affinity for the outer surface of the nanocrystal."<br><br>"21. The coated nanocrystal of claim 20, wherein the organic layer comprises a *short-chain polymer* terminating in a moiety having affinity for a suspending medium." |

21   It would be a substantial waste of resources for the Court and the parties to expend time

22   and resources on contentions, claim construction, and discovery relating to patents that are

23   plainly invalid over other patents asserted by Plaintiffs.  Indeed, courts have stayed discovery on

24   other issues where there are preliminary invalidity issues that could moot entire portions of the

25   case.  *See VirtualAgility Inc. v. Salesforce.com,* 759 F.3d 1307, 1314 (Fed. Cir. 2014) (reversing

26   denial of stay and remanding with instructions to grant a stay pending post-grant review of patent

27

28   [4] QDV reserves the right to challenge the claimed priority date of this patent.

1  validity); *Finjan, Inc. v. Fireeye, Inc.,* No. C 13-0311 SBA, 2014 U.S. Dist. LEXIS 75456, at *8,

2  *15 (N.D. Cal. May 30, 2014) (staying case where three of seven patents-in-suit were subject to

3  reexamination because reexamination of patent validity would "streamline this case" and all

4  patents-in-suit involve "the same anti-malware technology and share a common ancestry");

5  *SafeNet, Inc. v. Uniloc USA, Inc.*, Nos. 6:15-CV-97, 6:13-CV-906, 2015 U.S. Dist. LEXIS

6  135246, at *11-12 (E.D. Tex. Oct. 5, 2015) (setting issues of patent marking and release of

7  patent claims for early summary judgment because doing so would "resolve several important

8  issues that will simplify or eliminate issues" in companion cases); *General Patent Corp. Int'l v.*

9  *Hayes Microcomputer Prods.*, No. 97-429, 1997 U.S. Dist. LEXIS 21342, at *5-6 (C.D. Cal.

10 Oct. 20, 1997) (granting motion to bifurcate invalidity and enforceability and stay discovery on

11 infringement and damages, and stating:  "Here it appears the validity and enforcement issues

12 may be dispositive.  If the patents are found invalid or unenforceable there will be no need to

13 resolve the infringement and damages claims.  Conversely, if the patents are found valid and

14 enforceable it will likely promote settlement of the action before trial on the infringement and

15 damages issues.  Thus, it will almost certainly be efficient for this court to first address the issues

16 of validity and enforceability before turning to the other claims.").

17     Accordingly, QDV believes that the scope of the case will be significantly narrowed if

18 QDV is permitted to file an early motion for summary judgment of invalidity on this issue.

19     Plaintiffs oppose any attempt to narrow the case at this stage.  First, Plaintiffs argue that it

20 is premature to limit the number of asserted claims because it has not yet served infringement

21 contentions.  But this is precisely why the number of asserted claims should be limited now.

22 Despite conceding that they cannot possibly try all 392 claims of the asserted patents, Plaintiffs

23 would have the parties engage in lengthy and expensive contentions practice before there is any

24 possibility of limiting the number of asserted claims.  Indeed, under Plaintiffs' proposed

25 schedule, the parties could be forced to prepare and submit infringement contentions, invalidity

26 contentions, and claim construction submissions on hundreds of asserted claims that will never

27 be tried.  Where courts have routinely limited the plaintiff to 15 asserted claims, it would be far

28 more efficient to limit the number of asserted claims now.

Plaintiffs also complain that any reduction in the number of asserted claims should be accompanied by a reduction in the number of prior art references that QDV may assert.  QDV not does not object to a reduction in the number of prior art references once the number of asserted claims is limited.

Second, Plaintiffs oppose QDV's request for early summary judgment of the validity of the three UC Family 1 patents discussed above because expert discovery is not scheduled to be completed until much later in the case.  Plaintiffs' position again shows the need to narrow the case now.  Plaintiffs would have the parties and the Court engage in months of contentions practice, claim construction, fact discovery, and expert discovery relating to three asserted patents that, as shown above, are on their face invalidated by other asserted patents.  It would be far more efficient to address the validity of these three patents now to narrow the case from the outset and avoid months of wasted and unnecessary litigation. *See General Patent Corp.*, 1997 U.S. Dist. LEXIS 21342, at *5-6 ("Here it appears the validity and enforcement issues may be dispositive.  If the patents are found invalid or unenforceable there will be no need to resolve the infringement and damages claims.  Conversely, if the patents are found valid and enforceable it will likely promote settlement of the action before trial on the infringement and damages issues.  Thus, it will almost certainly be efficient for this court to first address the issues of validity and enforceability before turning to the other claims.").  To the extent that Plaintiffs believes they need an expert to address the validity of the three UC Family 1 patents, they can submit an expert declaration with its summary judgment opposition.

## XVI.   EXPEDITED TRIAL PROCEDURE

The parties do not propose that this case proceed under the Expedited Trial Procedure of General Order 64 Attachment A.

## XVII.  PROPOSED SCHEDULE

### Plaintiff's Proposal

| Event | Deadline |
|---|---|
| Last day for Rule 26(a)(1) initial disclosures | August 15, 2016 |
| Initial Case Management Conference | August 22, 2016 |

| Event | Deadline |
|---|---|
| Plaintiffs' asserted claims and infringement contentions and accompanying documents Production *(Pat. L.R. 3-1, 3-2)* | September 9, 2016 |
| Defendant's invalidity contentions and accompanying document production *(Pat. L.R. 3-3, 3-4)* | October 24, 2016 |
| Exchange of proposed terms for construction *(Pat. L.R. 4-1)* | November 10, 2016 |
| Exchange of preliminary claim constructions and extrinsic evidence *(Pat. L.R. 4-2)* | December 1, 2016 |
| Joint claim construction and prehearing statement *(Pat. L.R. 4-3)* | December 23, 2016 |
| Claim construction discovery cutoff *(Pat. L.R. 4-4)* | January 23, 2017 |
| Claim construction opening brief *(Pat. L.R. 4-5(a))* | February 6, 2017 |
| Claim construction responsive brief *(Pat. L.R. 4-5(b))* | February 24, 2017 |
| Claim construction reply brief *(Pat. L.R. 4-5(c))* | March 6, 2017 |
| Tutorial | TBD |
| Claim construction hearing *(Pat. L.R. 4-6)* | TBD |
| Advice of counsel disclosure | 50 days after claim construction ruling |
| Further Joint Case Management Report | Within 30 days of claim construction ruling |
| Substantial Completion of Document Production | 60 days before Fact Discovery Cutoff |
| Fact Discovery Cutoff | 120 days after claim construction ruling |
| Opening Expert Reports | 165 days after claim construction ruling |
| Rebuttal Expert Reports | 30 days after opening expert reports |
| Expert Discovery Cutoff | 45 days after rebuttal expert reports |
| Deadline for filing dispositive motions | 45 days after close of expert discovery |
| Pretrial Conference | TBD |
| Trial | TBD |

### Defendant's Proposal

As set forth above, QDV believes that this case should be narrowed at this stage so that the parties and the Court do not waste of time and resources on contentions, claim construction,

and discovery relating to claims and patents that Plaintiffs have no intention of pursuing through trial. QDV therefore proposes that case be narrowed by limiting the number of asserted claims and early summary judgment of invalidity prior to these events, as set forth below:

| Event | Deadline |
|---|---|
| Last day for Rule 26(a)(1) initial disclosures | August 15, 2016 |
| Initial Case Management Conference | August 22, 2016 |
| Deadline to elect no more than 15 asserted claims | September 9, 2016 |
| Plaintiffs' asserted claims and infringement contentions and accompanying documents Production (*Pat. L.R. 3-1, 3-2*) | September 9, 2016 |
| Defendant's invalidity contentions and accompanying document production (*Pat. L.R. 3-3, 3-4*) | October 24, 2016 |
| Deadline to request early summary judgment of invalidity | November 10, 2016 |
| Deadline for submitting further case management statement tied to decision on early summary judgment to discuss dates for claim construction, closure of discovery, trial, etc. | Within 30 days of court's disposition of early summary judgment |
| Additional case management conference related to further case management conference. | Within 45 days of court's disposition of early summary judgment |

## XVIII. TRIAL

The parties have requested trial by jury. Plaintiffs expect that the trial will require approximately 10-12 court days. Defendants expect that, after the case is narrowed as discussed herein, the trial will require no more than five court days.

## XIX.   DISCLOSURE OF NON-PARTY ENTITIES OR PERSONS

### Plaintiffs' Statement:

Nanosys and MIT filed their Certificate of Interested Entities on April 14, 2016. UC filed its Certificate of Interested Entities on April 14, 2016. Nanosys states that it has no parent corporation, that The 3M Company owns more than 10% of Nanosys's stock, and no other publicly traded corporation owns more than 10% of Nanosys's stock. MIT states that it has no parent corporation and that no publicly held company owns more than 10% of MIT's stock. UC

1  states that it has no parent corporation and that no publicly held company owns more than 10%

2  of UC's stock.   Nanosys and MIT state that Moungi Bawendi, Klavs F. Jensen, Bashir O.

3  Dabbousi, Javier Rodriguez-Viejo, Federic Victor Mikulec, and Nathan E. Stott are persons that

4  (i) have a financial interest in the subject matter in controversy or in a party to the proceeding, or

5  (ii) have a non-financial interest in that subject matter or in a party that could be substantially

6  affected by the outcome of this proceeding.   UC states that Shimon Weiss, Michael C. Schlamp,

7  A. Paul Alivisatos, and Marcel Bruchez are persons that (i) have a financial interest in the subject

8  matter in controversy or in a party to the proceeding, or (ii) have a non-financial interest in that

9  subject matter or in a party that could be substantially affected by the outcome of this

10  proceeding.

11      **Defendant's Statement:**

12      QDV filed an Amended Certification of Interested Entities on April 27, 2016.   QDV

13  states that it has no parent corporation and that no publicly-held company owns more than 10%

14  of QDV's stock.   QDV states that North Bridge Venture Partners, Highland Capital Partners,

15  Passport Capital, Novus Energy Partners, Capricorn Investment Group, BASF Venture Capital,

16  Tsing Capital, In-Q-Tel, Steve Ward, Mustafa Ozgen, Seth Coe-Sullivan, Sean Dalton, Jeff

17  McCarthy, Gary Haroian, Dipender Saluja, and Michael Li are persons, associations of persons,

18  firms, partnerships, corporations (including parent corporations) or other entities that (i) have a

19  financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) have

20  a non-financial interest in that subject matter or in a party that could be substantially affected by

21  the outcome of this proceeding.

22  **XX.   PROFESSIONAL CONDUCT**

23      All attorneys of record for the parties have reviewed the Guidelines for Professional

24  Conduct for the Northern District of California.

25  **XXI.   ADDITIONAL MATTERS**

26      **A.   Technology Tutorial**

27      The parties propose presenting a technology tutorial to the Court prior to the Claim

28  Construction Hearing or, if the Court prefers, before any early motions for summary judgment

1    are filed.

2         **B.      Claim Construction**

3         The parties believe that determination of the order of presentation and estimated length of

4    the Claim Construction Hearing would be premature at this time. The parties will address their

5    positions on the Claim Construction Hearing, if necessary, when filing the Joint Claim

6    Construction Statement pursuant to Patent Local Rule 4-3, and will defer to the Court as to

7    whether a Claim Construction Prehearing Conference is necessary or appropriate in this case.

8         QDV proposes that claim construction briefing, as well as the Claim Construction

9    Hearing, be scheduled after the case has been sufficiently narrowed, as discussed above.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated:  August 15, 2016

Respectfully submitted,

LATHAM & WATKINS LLP

By      _/s/ Douglas E. Lumish_____
        Douglas E. Lumish
        Richard G. Frenkel
        Gregory K. Sobolski
        Nicholas Yu

Attorneys for Plaintiffs NANOSYS, INC. and
MASSACHUSETTS INSTITUTE OF
TECHNOLOGY

FARELLA BRAUN + MARTEL LLP

By      _/s/ James L. Day_____
        James L. Day
        Winston Liaw

Attorneys for Plaintiff THE REGENTS OF
THE UNIVERSITY OF CALIFORNIA

WILMER CUTLER PICKERING HALE AND
DORR LLP

By      _/s/ Michael J. Summersgill____
        Michael J. Summersgill
        Donald R. Steinberg
        Jordan L. Hirsch
        Arthur W. Coviello

Attorneys for Defendant QD VISION, INC.

1

## **ATTESTATION**

2      Pursuant to Local Rule 5-1(i)(3), I hereby attest that the concurrence in the filing of this

3 document has been obtained from the other signatories, which shall serve in lieu of their

4 signatures.

5

6 Dated:  August 15, 2016                    By    */s/ Douglas E. Lumish*

7                                                      Douglas E. Lumish

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28