UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **NANOSYS, INC., ET AL.,**<br><br>　　　　　　Plaintiffs,<br><br>　　　v.<br><br>**QD VISION, INC.,**<br><br>　　　　　　Defendant. | Case No.  16-cv-01957-YGR<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 45 |

Plaintiffs bring this action against defendant QD Vision, Inc. ("QDV") for alleged infringement of thirteen patents.[1]  Plaintiffs bring claims for:  (i) direct infringement of ten of the patents; (ii) induced infringement of one of the patents; and (iii) contributory infringement of two of the patents.  Additionally, plaintiffs allege that QDV's direct infringement of seven of the patents was willful, thereby warranting an award of enhanced damages.

Currently before the Court is QDV's motion to dismiss certain claims from the FAC.  Specifically, QDV moves to dismiss plaintiffs' claims for the following:  (i) induced infringement for Patent No. 9,182,621 ("621 Patent"); (ii) contributory infringement of Patent Nos. 8,648,524 ("524 Patent") and 9,063,363 ("363 Patent"); and (iii) willful infringement of Patent Nos. 6,207,229 ("229 Patent"), 6,322,901 ("901" Patent"), 8,481,112 ("112 Patent"), 8,481,113 ("113 Patent"), 6,576,291 ("291 Patent"), 6,821,337 ("337 Patent"), and 7,138,098 ("098 Patent") (the "Willful Infringement Claims").  (Dkt. No. 45, "Mtn.")  Plaintiffs have filed a response (Dkt. No. 47, "Opp'n"), and QDV has replied (Dkt. No. 48, "Reply").  QDV does not move to dismiss plaintiffs' claims for direct infringement (Mtn. 3 n.1) and has filed a partial answer to the FAC for those claims.  (Dkt. No. 46.)

Having carefully considered the pleadings, the papers submitted on this motion, and oral arguments held on August 9, 2016, and for the reasons set forth more fully below, the Court

---

[1] Plaintiffs filed their original complaint on April 14, 2016.  (Dkt. No. 1.)  After QDV filed a motion to dismiss, plaintiffs filed an amended complaint on June 14, 2016, which remains the operative complaint.  (Dkt. No. 36, "FAC.")

**GRANTS IN PART AND DENIES IN PART** QDV's motion to dismiss.

## I.    BACKGROUND

Plaintiff Nanosys is a Delaware company with its principal place of business in Milpitas, California.  (FAC ¶ 1.)  Plaintiff Regents of the University of California ("UC") is a public entity located in and existing under the laws of California.  (*Id.* at ¶ 2.)  Plaintiff Massachusetts Institute of Technology ("MIT") is a non-profit research and educational institution located in Cambridge, Massachusetts.  (*Id.* at ¶ 3.)  QDV is a Delaware company with its principal place of business in Lexington, Massachusetts.  (*Id.* at ¶ 4.)

Nanosys was founded in 2001 and according to the FAC is a "leading innovator in the development of quantum dots, a state of the art nanocrystal semiconductor technology used in ultra-high definition displays being commercialized by many of the world's leading display companies."  (*Id.* at ¶ 5.)  According to the FAC, "quantum dots are capable of converting incoming light into wavelengths that correspond to nearly any color visible to the human eye with remarkable efficiency" and can "produce display images with greater brightness and a fuller color palette than ever before."  (*Id.* at ¶6.)  To commercialize this technology, plaintiffs allegedly produced "Quantum Dot Concentrate material" and "Quantum Dot Enhancement Film," which plaintiffs claim create displays that are "brighter and use less energy than other display technologies."  (*Id.* at ¶ 7.)

The following allegations are relevant to the instant motion:

Plaintiffs allege that QDV had a "vision for the future of nanocyrstal technology that was different from the photoluminescent technology pioneered by Nanosys."  (*Id.* at ¶ 11.)  However, because QDV allegedly was not successful in developing a viable commercial product, it "quickly switch[ed] to developing quantum dot display technology based on Nanosys's exclusively licensed patents."  (*Id.* at ¶ 13.)  According to the FAC, in late 2015, "Nanosys became concerned that QDV was competing with Nanosys by producing, marketing, and selling infringing inferior products that violated Nanosys's exclusive rights."  (*Id.* at ¶ 20.)  For instance, "QDV began selling infringing quantum dots under its Color IQ[] brand that were used in televisions."  (*Id.*)  Plaintiffs allege that QDV has continued to market and sell its quantum dot products under the

1    Color IQ brand through its website, conferences, presentations, and articles.  (*Id.* at ¶¶ 21–25.)

2             Specifically, plaintiffs allege that QDV has infringed thirteen of its patents related to

3    quantum dot technology.[2]  The patents in Counts 1 through 10 are related to the actual materials,

4    or methods of manufacturing materials, used to create quantum dots/nanocrystals and

5    "luminescent semiconductor nanocrystal materials."  (*See id.* at ¶¶ 40, 50, 60, 70, 80, 89, 98, 107,

6    115, 123.)  As to these counts, plaintiffs allege that QDV has directly infringed on their patents.

7    QDV is not moving to dismiss the direct infringement claims.

8             However, QDV is moving to dismiss allegations of willful infringement for the patents in

9    Counts 1 through 7.  As to each of these patents, plaintiffs allege that some of "QDV's co-

10   founders are named investors" and therefore knew of the patents and should have been aware that

11   their products were infringing on these patents.  (*Id.* at ¶¶ 41 (229 Patent); 51 (901 Patent); 61

12   (112 Patent); 71 (113 Patent); 81 (291 Patent); 90 (337 Patent); 99 (098 Patent).)  Additionally, as

13   to the patents in Counts 1, 2, 5, 6, and 7, plaintiffs allege that certain disclosures were made

14   between Nanosys and QDV in 2009 which should have also put QDV on notice about these

15   patents.  (*Id.*)[3]

16           QDV also moves to dismiss Counts 11, 12, and 13.  With respect to Count 13, QDV

17   moves to dismiss claims that QDV induces infringement of the 621 Patent.  This patent, issued on

18   November 10, 2015, relates to electronic displays using the quantum dot/nanocrystal technology

19   and the methods of using the quantum dot/nanocrystal technology to create an electronic display.

20   (*Id.* at ¶ 159.)  Plaintiffs allege infringement occurred by "providing encouragement, instructions,

21   protocols, and written guidance to [defendant's] customers about how to incorporate a quantum

22   dot product marketed by QDV under the trade name Color IQ[] . . . into certain color display

23   apparatuses."  (*Id.* at ¶ 163.)  Claim One of the 621 Patent reads, in pertinent part:

24

25           [2] The first seven of these patents in Counts 1 through 7 are patents owned by MIT and
26   licensed to Nanosys, whereas the patents in Counts 8 through 13 are patents owned by UC and
     licensed to Nanosys.  (*Id.* at ¶¶ 36, 46, 56, 66, 76, 85, 94, 127, 143, 159.)

27           [3] The 112 and 113 Patents in Counts 3 and 4 were not issued until 2013 and therefore were
28   not part of the alleged disclosures in 2009.  (*Id.* at ¶¶ 56, 66.)

United States District Court
Northern District of California

A method of making a display apparatus, the method comprising: providing an optical pumping source comprising one or more blue LEDs; placing a layer of quantum dots over said optical pumping source, said quantum dots emitting light in response to exposure to light from said optical pumping source; and placing a transparent plate over said layer of quantum dots such that said layer of quantum dots is positioned between said optical pumping source and said transparent plate.

(Dkt. No. 36-13 at 12.)  According to plaintiffs, QDV has induced certain manufacturers to infringe on this patent by using the described method to create certain display apparatuses, such as the "Sony XBR-55X900A television, the Philips Monitors 27" 276E6ADSS monitor, the Hisense 55" ULED K7100 television, and the TCL H9700 television."  (FAC ¶¶ 166–67.)  Plaintiffs allege that QDV knew of this patent because "QDV's founders and key employees were, at least, aware of and knowledgeable about developments and advances in the field and patent filings through their activities conducted through industry conferences, research, and development."  (*Id.* at ¶ 162.)  Alternatively, QDV had knowledge of the patent at the latest as of April 18, 2016 when the original complaint in this action was filed.  (*Id.*)

Next, plaintiffs assert claims of contributory infringement in Counts 11 and 12 with respect to the 524 and 363 Patents.  The 524 Patent, entitled "Electronic displays using optically pumped luminescent semiconductor nanocrystals" was issued on February 11, 2014.  (*Id.* at ¶ 127.)  The 363 Patent, entitled "Electronic displays using optically pumped luminescent semiconductor nanocrystals" was issued on June 23, 2015.  (*Id.* at ¶ 143.)  Each of these patents describes an apparatus wherein the layer of quantum dots (524 Patent) or nanocrystals (363 Patent) are "positioned between [the blue LED] optical pumping source and [a] transparent plate."  (Dkt. 36-11 at 11; Dkt. No. 36-12 at 12.)  As to each, plaintiffs allege that QDV has and continues to contribute to the infringement of the patents by "specially making and/or adapting the quantum dot product marketed by QDV under the trade name Color IQ[] . . . which has no substantial non-infringing uses, for use in certain color display apparatuses . . . which directly infringe" each patent."  (FAC ¶¶ 131 (524 Patent); 148 (363 Patent).)  Plaintiffs allege that QDV knew of these patents because "QDV's founders and key employees were, at least, aware of and knowledgeable about developments and advances in the field and patent filings through their activities conducted

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1  through industry conferences, research, and development."  (*Id.* at ¶¶ 130, 146.)  Alternatively,

2  plaintiffs allege that QDV had knowledge of these patents at the latest as of April 18, 2016 when

3  the original complaint in this action was filed.  (*Id.*)

## II.   LEGAL STANDARD

5       Pursuant to Rule 12(b)(6), a complaint may be dismissed for failure to state a claim upon

6  which relief may be granted.  Dismissal for failure to state a claim under Federal Rule of Civil

7  Procedure 12(b)(6) is proper if there is a "lack of a cognizable legal theory or the absence of

8  sufficient facts alleged under a cognizable legal theory."  *Conservation Force v. Salazar*, 646 F.3d

9  1240, 1242 (9th Cir. 2011) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th

10  Cir. 1988)).  The complaint must plead "enough facts to state a claim [for] relief that is plausible

11  on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible on its

12  face "when the plaintiff pleads factual content that allows the court to draw the reasonable

13  inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662,

14  678 (2009).  If the facts alleged do not support a reasonable inference of liability, stronger than a

15  mere possibility, the claim must be dismissed.  *Id.* at 678–79; *see also In re Gilead Scis. Sec.*

16  *Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (stating that a court is not required to accept as true

17  "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable

18  inferences").

19       "Federal Rule of Civil Procedure 8(a)(2) requires only a 'short and plain statement of the

20  claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of

21  what the . . . claim is and the grounds upon which it rests.'"  *Twombly*, 550 U.S. at 554–55

22  (quoting Fed. R. Civ. P. 8(a)(2)) (alteration in original).  Even under the liberal pleading standard

23  of Rule 8(a)(2), "a plaintiff's obligation to provide the grounds of his entitlement to relief requires

24  more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

25  will not do."  *Id.* at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (internal brackets and

26  quotation marks omitted)).  The Court will not assume facts not alleged, nor will it draw

27  unwarranted inferences.  *Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a

28  plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its

United States District Court
Northern District of California

1    judicial experience and common sense.").

2    **III.    DISCUSSION**

3        The Court first addresses QDV's motion on Count 13 for induced infringement of the 621

4    Patent; then Counts 11 and 12 for contributory infringement of the 524 and 363 Patents,

5    respectively; and finally the allegations of willful infringement in Counts 1 through 7.

6        **A.    Count 13:  Induced Infringement of the 621 Patent**

7        To make out a claim for induced infringement, plaintiffs must sufficiently allege that QDV

8    "actively induce[d] infringement of a patent."  35 U.S.C. § 271(b).  "Inducement requires a

9    showing that the alleged inducer knew of the patent, knowingly induced the infringing acts, and

10   possessed a specific intent to encourage another's infringement of the patent."  *Vita-Mix Corp. v.*

11   *Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009).  "[I]nduced infringement under

12   [section] 271(b) requires knowledge that the induced acts constitute[d] patent infringement."

13   *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011).  This standard is also met

14   where a plaintiff has made a showing that defendant "willfully blinded itself to the infringing

15   nature" of the acts it encouraged others to make.  *Id.* at 771.  QDV contends that plaintiffs have

16   inadequately alleged (1) QDV's knowledge of the patent and (2) QDV's specific intent to

17   encourage infringement of the patent.  Thus:

18        **1.  Knowledge of the Patent**

19       With respect to the knowledge element, QDV contends that plaintiffs have alleged merely

20   that QDV "'knew or should have known' of the [621] Patent because unidentified 'employees'

21   were allegedly aware of unidentified 'industry developments' and does not cite a single fact

22   showing that anyone at QDV actually knew of the 621 patent at any point prior to the filing of this

23   case."  (Mtn. 11.)

24       Plaintiffs counter that they sufficiently alleged knowledge by alleging that:  (i) QDV

25   founders and key employees monitor developments in the quantum dot industry (FAC ¶ 162) and

26   (ii) QDV at least should have known about the 621 Patent but was willfully blind to its existence

27   (*id.* at ¶¶ 162, 174).  Alternatively, plaintiffs argue that at least as of the time of the filing of the

28   original complaint, QDV had actual knowledge of the 621 Patent.  The Court agrees, in part.

United States District Court
Northern District of California

6

1    Plaintiffs' only allegation in the complaint related to QDV's pre-suit knowledge of the 621

2  Patent is the following:  "On information and belief, QDV's founders and key employees were, at

3  least, aware of and knowledgeable about developments and advances in the field and patent filings

4  through their activities conducted through industry conferences, research, and development."  (*Id.*

5  at ¶162.)[4]  This allegation is insufficient to support an inference that QDV had knowledge of the

6  patent prior to the filing of this lawsuit.  *See, e.g.*, *Boundaries Sols. Inc. v. CoreLogic, Inc.*, No.

7  14-cv-00761, 2014 WL 7463708, at *3 (N.D. Cal. Dec. 30, 2014) (noting that even "knowledge of

8  a patent application does not suffice to show willful blindness"); *McRee v. Goldman*, No. 11-cv-

9  00991, 2012 WL 3745190, at *3 (N.D. Cal. Aug. 28, 2012) (same).  Plaintiffs fail to expound

10  upon the connections which they argue, but do not plead, exist given this particular market.

11  Without more, the Court cannot conclude that their claim is plausible.[5]

12    Nevertheless, to the extent that the FAC alleges claims of induced infringement after the

13  filing of the suit, courts have held that post-suit knowledge is sufficient to sustain a finding that

14  defendant had the requisite knowledge to support claims for induced infringement.  *See CAP Co.,*

15  *Ltd. v. McAfee, Inc.*, Nos. 14-cv-05068 & 14-cv-05071, 2015 WL 3945875, at *4–5 (N.D. Cal.

16  June 26, 2015); *see also Walker Digital, LLC v. Facebook, Inc.*, 2012 WL 1129370, at *6 n.11 (D.

17  Del. Apr. 4, 2012); *Rembrandt Soc. Media, L.P. v. Facebook, Inc.*, 950 F. Supp. 2d 876, 882 (E.D.

18  Va. June 12, 2013) (noting that the majority rule is to allow post-suit knowledge but adding that

19  the consequence of relying on service of the suit is that plaintiff may only recover damages "for

20
―――――――――――――――

21    [4] Plaintiffs provide additional facts in their opposition to support their claims of
knowledge, such as an allegation that one of the founders, Dr. Bawendi, "monitors developments
22  in the emerging quantum dot industry."  (Opp'n 5.)  To the extent plaintiffs have alleged
additional facts in their opposition not contained in the FAC, the Court cannot consider those facts
23  in its decision on a motion to dismiss.  *Schneider v. Cal. Dep't of Corrections*, 151 F.3d 1194,
1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may*
24  *not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in
opposition to a defendant's motion to dismiss.") (emphasis in original); *Phillips v. Apple, Inc.*, No.
25  15-cv-04879, 2016 WL 1579693, at *7 n.4 (N.D. Cal. Apr. 19, 2016).  However, the Court
considers these facts in determining whether leave to amend should be granted.

26
    [5] At oral argument, counsel for plaintiffs also indicated that the quantum dot market is
27  composed of basically two participants:  Nanosys and QDV.  However, plaintiffs did not assert
this allegation in the FAC.  Such information may be relevant to create an inference of pre-suit
28  knowledge.

1   indirect infringement for the period of time that commences once the putative infringer learns of

2   the patent").  Here, the original complaint in this action was filed on April 18, 2016, and there can

3   be no doubt that as of that date QDV had actual knowledge of the existence of the 621 Patent.

### 2.  Specific Intent

5       QDV also argues that plaintiffs have insufficiently alleged facts that would show that QDV

6   specifically intended to cause infringement.  More particularly, QDV argues that plaintiffs only

7   alleged that QDV provided general instructions to its customers as to how to use the technology.

8   QDV contends that these allegations are insufficient to sustain an induced infringement claim.

9   Plaintiffs, on the other hand, argue that the instructions QDV provided to its users match the exact

10  method laid out in Claim One of the 621 Patent.  (*Compare* FAC Ex. 13 (621 Patent) *with* FAC ¶¶

11  163–74.)  This, plaintiffs contend, is sufficient to sustain a claim at the pleadings stage.

12      The Federal Circuit's decision in *In re Bill of Lading Transmission and Processing System*

13  *Patent Litigation*, (Fed. Cir. 2012) ("*In re Bill of Lading*") is instructive.  In that case, the Federal

14  Circuit reversed the district court's dismissal of the plaintiff's amended complaint against six

15  different defendants concluding that the allegations were sufficient to support claims for induced

16  infringement.  *Id.* at 1346.  There, the plaintiff alleged that the instructions at issue touted the

17  benefits of using the patented method and provided instructions on how to use the same.  *Id.* at

18  1341–46.  The Federal Circuit agreed and held that even in situations where defendant's

19  instructions did not include "an essential step of the patented method," the allegations were

20  sufficient so long as a court was able "to draw the reasonable inference that the defendant is liable

21  for the misconduct alleged."  *Id.* at 1342 (citation omitted).

22      The Court finds that the allegations in the FAC are sufficient to raise an inference that

23  QDV specifically intended to teach an infringing use of the 621 Patent.  *See Vita-Mix*, 581 F.3d at

24  1329 n.2 (noting that the relevant inquiry is "whether [the] instructions teach an infringing use of

25  the device such that [courts] are willing to infer from those instructions an affirmative intent to

26

27

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1    infringe the patent").[6]  Plaintiffs allege that QDV instructs its "display manufacturer customers to

2    directly infringe at least claim 1" by showing that its Color IQ device is filled with "quantum

3    dots," which "sits atop the blue LED light bar."  (FAC ¶ 169.)  Additionally, plaintiffs allege that a

4    video published by QDV shows that the quantum dots "'emit[] light in response to exposure to

5    light from said optical pumping source,' as recited in the third limitation of claim 1 of the '621

6    patent."  (*Compare id. with* Dkt. No. 36-13 at 12.)  Such allegations are not the type of bare and

7    conclusory allegations that courts have found are insufficient to infer specific intent to induce

8    infringement.  *See Unisone Strategic IP, Inc. v. Life Techs. Corp.*, No. 13-cv-1278, 2013 WL

9    5729487, at *3 (S.D. Cal. Oct. 22, 2013) (finding insufficient allegation that defendant

10   "intentionally designs, manufactures, markets, promotes, sells, services, supports (including

11   technical support), provides updated software, and educates its customers and suppliers about its []

12   software"); *Intellectual Ventures I LLC v. Bank of Am., Corp.*, No. 13-cv-358, 2014 WL 868713,

13   at *2 (W.D.N.C. Mar. 5, 2014) (finding allegations insufficient where plaintiffs "merely argued

14   that [d]efendants advertised their accused products on its website"); *Memory Integrity, LLC v.

15   Intel Corp.*, 144 F. Supp. 3d 1185, 1197 (D. Or. Nov. 13, 2015) (finding allegations insufficient

16   where defendant did not instruct customers to use the products in an infringing manner).  The

17   instructions QDV allegedly provided to its customers appear to be much more specific and

18   tailored to Claim One of the 621 Patent.  The allegations hinge not only on "information and

19   belief," but were also based on a QDV presentation made on January 22, 2015.  (FAC Ex. 14.)

20   These connections, in addition to the specifics of the promotional materials being used, are

21   sufficient to satisfy this pleading element.  (FAC ¶¶ 169–73.)  *See Symantec Corp. v. Veeam

22   Software Corp.*, No. 12-cv-00700, 2012 WL 1965832, at *5 (N.D. Cal. May 31, 2012) ("Specific

23

24        [6] QDV cites *Vita-Mix* in support of its motion to dismiss because the Federal Circuit found
25   in that case that the instructions provided by the defendant on how to use its product did not
     infringe plaintiff's patent.  *Vita-Mix*, 581 F.3d at 1329.  However, *Vita-Mix* is in the context of a
26   motion for summary judgment and thus does not support QDV's position that the allegations here
     are insufficient at this stage of the litigation.  *Id.*  Moreover, the Federal Circuit found that one of
27   the instructions at issue taught a method defendant "could have reasonably believed was non-
     infringing" and the amended instructions "teach an undisputedly non-infringing use, evidencing
28   intent to discourage infringement."  *Id.*  Those are not the allegations here.

United States District Court
Northern District of California

intent can reasonably be inferred in this case from the allegations regarding defendant's marketing materials and offers to sell the infringing products."); *Skyworks Sols. Inc. v. Kinetic Techs. Inc.*, No. 14-cv-00010, 2014 WL 1339829, at *3 (N.D. Cal. Apr. 2, 2014) (finding allegations sufficient where plaintiff alleged that defendant provided its customers with detailed design specifications).

However, consistent with the Court's finding that the allegations are insufficient to support an inference of pre-suit knowledge, the Court also finds that the allegations are insufficient to support the inference that QDV specifically intended to induce infringement prior to plaintiffs' original complaint.  QDV could not have intended to infringe upon a patent of which it had no knowledge.  To the extent plaintiffs can allege pre-suit knowledge adequately, the issue of intent will follow.[7]

Accordingly, the Court **DENIES** QDV's motion to dismiss the induced infringement claims for the 621 Patent in Count Thirteen, but notes that such claims are limited to post-suit actions because of plaintiffs' failure to allege pre-suit knowledge adequately.  Leave to amend is granted as to any pre-suit claims for induced infringement.

### B.    Counts 11 and 12:  Contributory Infringement of the 524 and 363 Patents

QDV moves to dismiss plaintiffs' claims for contributory infringement of the 524 and 363 Patents in Counts 11 and 12.  To make out a claim for contributory infringement, plaintiff must sufficiently allege that defendant "offers to sell or sells . . . a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially

---

[7] At oral arguments, QDV argued that allegations of post-suit knowledge could not support a finding that QDV had the specific intent to infringe based on pre-suit actions.  To the contrary, the Federal Circuit in *In re Bill of Lading* held that pre-suit actions were sufficient to support allegations of induced infringement where the complaint only alleged knowledge as of the filing of the complaint.  *In re Bill of Lading*, 681 F.3d at 1345 (discussing the Microdea Amended Complaint); *see also Walker Digital*, 852 F. Supp. 2d at 565–66 (finding that a defendant's "receipt of the complaint and decision to continue its conduct despite the knowledge gleaned from the complaint" satisfies the pleading standards for indirect infringement); *Symantec Corp.*, 2012 WL 1965832, at *5 (finding that the specific intent element was satisfied based on marketing materials but limited induced infringement to post-suit claims for failure to allege pre-suit knowledge adequately); *Rembrandt Soc. Media*, 950 F. Supp. 2d at 882 (finding that a patent infringer may be liable for continued indirect infringement after the filing of the suit).

1  made or especially adapted for use in an infringement of such patent, and not a staple article or

2  commodity of commerce suitable for substantial noninfringing use."  35 U.S.C. § 271(c); *see also*

3  *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1310 (Fed. Cir. 2005).

4  A plaintiff must "plead facts that allow an inference that the components sold or offered for sale

5  have no substantial non-infringing use."  *In re Bill of Lading*, 681 F.3d at 1337.

6        QDV argues that plaintiffs have failed to provide any facts showing that QDV's accused

7  infringing component, Color IQ, does not have any substantial, non-infringing uses.  In fact, QDV

8  contends, documents attached as exhibits to the FAC show that Color IQ can be used in other

9  ways, neither of which plaintiffs allege are infringing uses.  (*See* Dkt. No. 36-14 at 18 (QDV

10  presentation showing different arrangements of quantum dots and LEDs which are not infringing

11  uses); Dkt. No. 36-16 at 297, Fig. 3 (article discussing same).)  Additionally, QDV argues that

12  plaintiffs have failed to allege any facts suggesting that QDV knew that Color IQ was especially

13  made or especially adapted to infringe the 524 and the 363 Patents, and that plaintiffs failed to

14  allege any facts showing that QDV knew about the 524 and 363 Patents prior to the filing of this

15  suit.

16        The Court agrees with QDV.  The FAC alleges that the "Patent Infringing Component is

17  specifically designed and adapted for use in a display that contains at least a blue LED" and that

18  QDV "specifically intends that the [Patent Infringing Component] is used by placing it next to

19  blue LEDs such that the quantum dots are positioned between the blue LEDs and a transparent

20  plate."  (FAC ¶ 137; *see also id.* at ¶ 153.)  However, plaintiffs do not allege that the Patent

21  Infringing Component must be placed in this specific infringing configuration.  Indeed, as QDV

22  notes, exhibits in the FAC indicate that there are several different configurations that can be used

23  with the technology.  (Dkt. No. 36-16 at 296 (discussing different configurations for quantum dot

24  technologies).)  Plaintiffs, therefore, fail to show that Color IQ lacks any substantial, non-

25  infringing uses.  *See In re Bill of Lading*, 681 F.3d at 1338 (Fed. Cir. 2012) ("Where the product is

26  equally capable of, and interchangeably capable of both infringing and substantial non-infringing

27

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1    uses, a claim for contributory infringement does not lie.").[8]

2    Accordingly, the Court **GRANTS** QDV's motion to dismiss with leave to amend plaintiffs'

3    contributory infringement claims as to the 524 and 363 Patents in Counts 11 and 12 of the FAC.

4        **C.    Willful Infringement Claims**

5    QDV moves to dismiss plaintiffs' allegations of willful infringement in the first seven

6    counts, which may entitle plaintiffs to enhanced damages.  Section 284 allows courts to "increase

7    the damages up to three times the amount found or assessed" in a patent claim.  35 U.S.C. § 284.

8    "Section 284 allows district courts to punish the full range of culpable behavior," but "such

9    punishment should generally be reserved for egregious cases typified by willful misconduct."

10   *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 136 S. Ct. 1923, 1933–34 (2016).  "The

11   subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced

12   damages."  *Id.* at 1933.  As to each of the patents at issue in the Willful Infringement Claims,

13   QDV argues (i) that plaintiffs have failed to allege knowledge sufficiently and (ii) even if

14   plaintiffs have alleged knowledge sufficiently, they must allege more than mere knowledge, which

15   they have failed to do.

16   As for knowledge, QDV argues that plaintiffs should allege the identity of the "inventors

17   and QDV founders" referenced in the FAC, yet cites no cases supporting such specificity.  The

18   Court disagrees that some per se requirement should exist.  Indeed, courts have found that

19   allegations that defendant's employee was a named inventor of the patents at issue were sufficient

20   to sustain allegations of willful infringement at the pleadings stage.  *See Skyworks*, 2014 WL

21   1339829, at *5–6 (finding pre-suit knowledge allegations sufficient where defendant's founder

22   and employee was a named inventor of the patents at issue); *see also Potter Voice Techs., LLC v.*

23   *Apple, Inc.*, 24 F. Supp. 3d 882, 886 (N.D. Cal. 2014).  The question is whether the Court can

24   evaluate the plausibility of plaintiffs' claim *without* specific names alleged.  Here, the Court finds

25   _____

26       [8]  At oral argument, plaintiffs argued that the accused quantum dot rail product is
configured in the exact same way as the patented technology.  However, it is not clear from the

27   FAC that the patent infringing components defined in paragraphs 131 and 147 can *only* be
configured in a way that infringes on the patents at issue.  Indeed, as discussed above, the

28   literature attached to the FAC and certain allegations in the FAC raise the opposite inference.

United States District Court
Northern District of California

1   that plaintiffs' allegations of pre-suit knowledge are sufficient without specific names.

2       As for QDV's assertion that plaintiffs need to allege more than "mere knowledge" to

3   sustain a willfulness claim, the Court finds it should consider the totality of the allegations to

4   determine whether a claim of willfulness is plausible.  This is in line with long standing case law

5   providing courts with discretion to provide punitive damages "whenever the circumstances of the

6   case appear to require it."  *Tilghman v. Proctor*, 125 U.S. 136, 144 (1888), *superseded by statute*

7   *on other grounds as rec'd by Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648 (1983); *see also*

8   *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 508 (1964) (acknowledging that

9   plaintiffs could recover "punitive" or "increased" damages in a case of "willful or bad-faith

10  infringement"); *Topliff v. Topliff*, 145 U.S. 156, 174 (1892) (affirming decree of lower courts in

11  enhancing damages for patent infringement where infringer knowingly sold copied technology of

12  his former employer); *cf. Florida Prepaid Postsecondary Educ. Expense Bd. v. College Sav. Bank*,

13  527 U.S. 627, 648 n.11 (1999) (describing the enhanced damages provision of the patent laws as

14  "punitive").

15      Despite defendants' assertion, the Court disagrees that *Halo* created a separate test.  First,

16  *Halo* did not address pleading standards at the motion to dismiss stage, instead addressing what

17  plaintiffs needed to have shown in a motion for summary judgment and in a motion for judgment

18  as a matter of law.  Second, *Halo*, in fact, allows for broad discretion to award enhanced damage

19  awards for egregious infringement.  The Supreme Court in *Halo* rejected the two-part test

20  established by the Federal Circuit in *In re Seagate*, which required a showing of "objective

21  recklessness" before a district court may award enhanced damages.  *Halo*, 136 S. Ct. at 1932–33.

22  The Supreme Court held that the "subjective willfulness of a patent infringer, intentional or

23  knowing, may warrant enhanced damages, without regard to whether his infringement was

24  objectively reckless."  *Id.* at 1933.  The Supreme Court explained that the patent laws "allow[]

25  district courts to punish the full range of culpable behavior . . . free from the inelastic constraints

26  of the *Seagate* test" noting, however, that "such punishment should generally be reserved for

27

28

13

1    egregious cases typified by willful misconduct." *Id.* at 1933–34.[9]

2        As indicated above, plaintiffs have asserted they can allege additional facts upon which

3    they can bolster allegations showing willfulness beyond a claim of mere knowledge.  Leave to

4    amend is granted to allege the same.

5        Accordingly, the Court **GRANTS** with leave to amend QDV's motion to dismiss plaintiffs'

6    Willful Infringement Claims in Counts 1 through 7.

7    **IV.**        **CONCLUSION**

8        For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** QDV's

9    motion to dismiss.  Plaintiffs shall file a second amended complaint within twenty-one (21) days

10   of the date of this Order.  QDV shall file a response within twenty-one (21) days of the filing of

11   the amended complaint.

12       This Order terminates Docket Number 45.

13       **IT IS SO ORDERED.**

14   Dated: September 16, 2016

15                                 _____
16                                 **YVONNE GONZALEZ ROGERS**
                                   **UNITED STATES DISTRICT COURT JUDGE**

---

[9] QDV cites to Justice Breyer's concurrence in *Halo*, in which he notes that "'willful misconduct' do[es] not mean that a court may award enhanced damages simply because the evidence shows that the infringer knew about the patent *and nothing more*." *Id.* at 1936 (Breyer, J., concurring) (emphasis in original).  Justice Breyer, however, goes on to acknowledge that the Supreme Court held that "'intentional or knowing' infringement 'may' warrant a punitive sanction," adding that courts should determine if the circumstances of the particular case "transform[] simple knowledge into such egregious behavior."  *Id.*

United States District Court
Northern District of California